636 So.2d 391 (1994)
James Steven MILLER
v.
STATE of Mississippi.
No. 91-KA-00057.
Supreme Court of Mississippi.
April 14, 1994.
As modified on Denial of Rehearing June 9, 1994.
*392 J. Edward Rainer, Rainer & Hyche, Brandon, for appellant.
Michael C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
James Miller was convicted of unnatural intercourse as proscribed by Miss. Code Ann. § 97-29-59 (1972)[1] in the Rankin County Circuit Court and sentenced to serve a prison term of ten years with five years suspended. Miller denies that the event occurred. On appeal, he challenges the constitutionality of *393 the statute, as well as, the validity of his conviction. We conclude that the statute does not suffer constitutionally and that the Miller's trial was free from reversible error. Accordingly, we affirm.

I.
Miller was indicted by a Rankin County Grand Jury on March 30, 1990, for violating Miss. Code Ann. § 97-29-59 on or about February 2, 1990. The indictment alleged that Miller, a manager of a fast food restaurant in Rankin County, performed fellatio on D.M.[2], a 17-year-old employee of the restaurant.
D.M. testified at trial that he was cleaning the restaurant kitchen on the night in question, when Miller struck up a conversation with him. During the course of the conversation, Miller provided D.M. with two rum and cola cocktails. At that time, D.M. testified there was no one present in the restaurant, except for him and Miller.
Around midnight, according to D.M., E.W., a then 16-year-old, who was employed as a cashier at the restaurant, returned to the restaurant and was admitted by Miller. All three eventually adjourned to Miller's office to watch television. Soon after, D.M. testified he dozed off in Miller's office. D.M. told the jury he regained consciousness when Miller began to fondle him. At that time, D.M. testified that Miller told E.W., who was in the office when D.M. awoke, to leave. Following E.W.'s departure, D.M. testified that Miller performed fellatio on him.
E.W. testified that he witnessed Miller performing fellatio on D.M. by looking back into the office after being asked to leave.
Miller testified that he worked from noon until closing on February 3, 1990. Miller stated D.M. and E.W. worked the evening/night shift on that day, and D.M. remained in the store after E.W.'s departure. The appellant testified that he did pour D.M. two rum and cola cocktails, but that he poured the minor the drinks because he knew D.M.'s parents allowed D.M. to drink and because Miller believed D.M. would not stay and talk with Miller unless Miller poured him the drinks. He said that the second drink was a replacement for the first, which spilled.
Miller testified his conversation with D.M. began while he was closing out the cash registers, at about 11:15 p.m. According to Miller, sometime during the conversation, a glassy-eyed E.W. entered the store around midnight. Miller stated E.W. admitted to him he had consumed several ounces of pure grain alcohol. About 12:45 a.m., on February 4, 1990, Miller testified that D.M. left the restaurant. Miller and E.W. departed about five minutes later.
Miller denied "taking advantage" of D.M. after intoxicating him. Miller denied that D.M. got drunk and also denied that he provided liquor to minors on any other occasion at the restaurant. Miller claimed the State's case against him was a concoction based wholly on D.M.'s need for attention and E.W.'s desire for revenge. The revenge motive allegedly stemmed from an incident in which Miller cautioned E.W. about certain of his visitors at the restaurant and threatened to report adversely to the owners of the restaurant.
Following conviction, all post-trial motions were denied. Miller raises several challenges to his conviction, most of which are meritless, and are therefore unworthy of extended discussion. We do pause, however, to address Miller's first impression contentions that Miss. Code Ann. § 97-29-59 violates his constitutional right of privacy, as well as, that the statute is unconstitutionally overbroad.

II.
The United States Supreme Court has held the right of privacy embodied in the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States does not extend to consensual sexual relations between homosexuals, Bowers v. Hardwick, 478 U.S. 186, 195-96, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140, 148-49 (1986). Miller's privacy claim under the United *394 States constitution must therefore fail.[3] On the other hand, his contention that the statute violates his right to privacy under the Mississippi Constitution must be addressed.
Miller relies on one Mississippi case to support his state-based privacy argument: In Re Brown, 478 So.2d 1033, 1040 n. 7 (Miss. 1985). In Brown, this Court held a theologically-based refusal to undergo blood transfusions is embraced by a right of privacy found in Article 3, Section 18 of the Mississippi Constitution. Id. at 1039 n. 5. The petitioner in Brown was a Jehovah's Witness, who was seriously wounded by gunfire, yet refused a blood transfusion on the basis that her religious beliefs included a teaching that anyone who receives blood from another is damned. Id. at 1035-36. Nonetheless, pursuant to a chancery court order to keep the petitioner alive, petitioner was involuntarily injected with blood from other humans. Id.[4] The Brown Court thus weighed the petitioner's privacy interest against the State's interest to keep the petitioner alive. Id. at 1039-40. Brown is distinguishable from the instant case as Miller does not contend acts of sodomy are rooted in his religious beliefs.
One paragraph of dicta from Brown arguably works in favor of Miller:
Though in fact her religious beliefs are the reason for her rejection decision, Brown also claims her right of privacy. This right has no necessary connection with any organized religion nor any personal religious beliefs. It is secured to each person within the constitution  saint or sinner, Christian or Jew, agnostic or atheist. It may be claimed for motives noble or base. Id. at 1040.
Miller argues that as this Court held the State had no compelling interest in keeping the witness alive, the State, similarly, has no compelling interest in Miller's sex contacts. Miller cites to no Mississippi authority for his privacy claim other than Brown.
Article 3, Section 32 of the Mississippi Constitution mirrors the reservation of rights provision of the Ninth Amendment of the United States Constitution[5]. Article 3, Section 32 reads: "The enumeration of rights in this constitution shall not be construed to deny and impair others retained by, and inherit in, the people."
In a momentous article published over 100 years ago, Justice Brandeis contended that a right to privacy exists for citizens and that right entitles citizens "to be let alone." Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193, 193, 195 (1890). This Court has held that the right of privacy, whether it finds its genesis in the common law or in natural law, has been constitutionally guaranteed under Article 3, Section 32. Brown, 478 So.2d at 1040; see Dantzler v. State, 542 So.2d 906, 913 (Miss. 1989) (Robertson, J., dissenting).
That said, however, we need not reach the question here whether a private act between consenting adults runs afoul of our right of privacy. This case does not involve consenting adults. We, therefore, decline to reach the issue of the application of a right to privacy to our sodomy statute in general, as this defendant has no standing to raise that issue. Clearly, no right of privacy attaches to sexual acts committed with children, who have been illegally supplied with alcohol.

III.
Miller also argues that Miss. Code Ann. § 97-29-59 is constitutionally infirm as *395 vague and overbroad. His argument regarding vagueness was resolved in the negative by this Court over sixteen years ago in State v. Mays, 329 So.2d 65, 66 (Miss. 1976). The overbreadth contention is, however, one of first impression in Mississippi.
The U.S. Supreme Court differentiated vagueness and overbreadth in Zwickler v. Koota, 389 U.S. 241, 249-50, 88 S.Ct. 391, 396, 19 L.Ed.2d 444, 451 (1967). The Zwickler Court determined that a challenge for "vagueness" is a challenge that the statute "`either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application[.]" Zwickler, 389 U.S. at 249, 88 S.Ct. at 396, 19 L.Ed.2d at 451 (citing Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). Conversely, a challenge for overbreadth goes to "the constitutional principle that `a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" Zwickler, supra (citing N.A.A.C.P. v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 1313-14, 12 L.Ed.2d 325, 338 (1964)).[6]
Miller provides no authority for his overbreadth contention regarding Miss. Code Ann. § 97-29-59 (1972). Instead, his argument on "overbreadth" fundamentally restates his privacy argument.
Unlike the statute in Coates[7] as well as, for example, the statute at bar in Gooding v. Wilson, 405 U.S. 518, 518-19, 92 S.Ct. 1103, 1104, 31 L.Ed.2d 408, 412 (1972)[8] and the ordinance at bar in the Houston v. Hill, 482 U.S. 451, 457-61, 107 S.Ct. 2502, 2507-09, 96 L.Ed.2d 398, 409-11 (1987)[9], the Mississippi sodomy statute is not overbroad. The sweep of the statute does not invade an area of protected freedom. See N.A.A.C.P., supra; see also Bowers, 478 U.S. at 194-95, 106 S.Ct. at 2846, 92 L.Ed.2d at 148 (refusing to find a fundamental right to engage in sodomy). Indeed, although going more toward vagueness than overbreadth, the statute has been interpreted by this Court to embrace acts of fellatio since, at least, 1955. State v. Davis, 223 Miss. 862, 864, 79 So.2d 452, 452-53 (1955). For these reasons, Miller's contention that Miss. Code Ann. § 97-29-59 (1972) is unconstitutionally overbroad cannot stand.

IV.
Miller's other assignments of error: that the testimony of the witnesses was hopelessly *396 at odds warranting a directed verdict or peremptory instruction; that the verdict was against the overwhelming weight of the evidence; that fellatio does not meet the penetration requirement of the statute; that an accomplice instruction should have been given with reference to D.M.'s testimony; and that the court erred in allowing rebuttal to his accusation of ill will on the part of the witness through questions directed at an alleged sexual relationship between him and the witness do not require reversal.
Although there were inconsistencies in the version given by D.M. and E.W., they were not so inconsistent with respect to material facts as to require dismissal or to conclude that verdict was against the overwhelming weight of the evidence.

a.
The question whether fellatio, performed by the accused, violates the statute, has not been addressed by this court. Miller cites Hill v. State, 179 Miss 732, 176 So. 719 (1937), as authority for his argument that penetration by the accused is required. In Hill, this Court affirmed a circuit court's decision to sustain a demurrer. The circuit court held that cunnilingus is not sodomy as no penetration occurs. This Court affirmed, stating penetration is an essential element of sodomy. In State v. Davis, however, this court recognized that the statute here in question was codified under the title "Unnatural intercourse" not "Sodomy" and reasoned that fellatio, while not sodomy, was within the scope of the act. 223 Miss. at 864, 79 So.2d 452. Later, in State v. Mays, we cited with approval a quote from the United State Supreme Court which noted a view that fellatio and cunnilingus were within the terms of a statute proscribing "crimes against nature". 329 So.2d at 66 (Citing Rose, Warden v. Locke, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).
Having abandoned the view that the range of the statute is limited to sodomy, we necessarily abandoned the view that "penetration" is required in any sense other than that an act historically considered unnatural was committed. We note that, while it is not controlling in the context of the unnatural intercourse statute, the legislature has defined "sexual penetration" to include both fellatio and cunnilingus for purposes of the sexual battery statutes. Miss. Code Ann. § 97-3-97 (Supp. 1993); See, Johnson v. State, 626 So.2d 631 (Miss. 1993). Moreover, while cunnilingus arguably may involve no penetration at all, as that term is commonly used, fellatio does involve penetration. Fulfillment of the sodomy penetration requirement is not restricted to acts wherein the accused does the penetrating. We hold that an act of fellatio performed by the accused is an act proscribed by the statute. Miller's argument that he was improperly denied an instruction that required a finding that he penetrated D.M. must fail.

b.
The contention that Miller was entitled to an accomplice instruction must fail because there was not a factual basis for the conclusion that D.M. was an accomplice. Miller contended that the act never happened and D.M. contended that it happened at a time when he was helpless to prevent it. Moreover, D.M.'s testimony was corroborated in all essentials by that of E.W. No accomplice instruction was required. See, Burke v. State, 576 So.2d 1239, 1242 (Miss. 1991).

c.
Finally, Miller contends that the court erred in allowing him to be questioned concerning alleged sexual encounters with E.W. Miller had testified, over the state's objection, that E.W. was motivated to testify against Miller because Miller had cautioned him about associating with known homosexuals at the restaurant. The state countered with questions as to whether Miller had engaged in sexual conduct with E.W. These questions it says, were offered in response to Miller's allegations to tell the whole story. It notes that Miller was warned by the court about "opening the door" to this type inquiry when he attacked E.W. as he did.
It appears obvious that the state's inquiry into a relationship between E.W. and Miller is weak rebuttal, at best, to Miller's contention that he warned and threatened E.W. over association with known homosexuals. *397 Miller had a right to show evidence of bias on the part of the witness. MRE 615. The evidence that there was a sexual encounter between E.W. and Miller does nothing to counter Miller's allegation. Fatal to Miller's contention, however, is that no such evidence was offered. The court allowed Miller to be cross-examined on the subject and he denied any encounter. The court did not allow the state to put on evidence to rebut the denial. The questions should not have been allowed. Because they were answered in the negative, however, we cannot say that the error in permitting the questions warrants reversal.

V.
For the foregoing reasons the conviction is affirmed.
CONVICTION OF UNNATURAL INTERCOURSE AND SENTENCE OF TEN YEARS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
SMITH, J., not participating.
NOTES
[1] § 97-29-59. Unnatural intercourse.

Every person who shall be convicted of the detestable and abominable crime against nature committed with mankind or with a beast, shall be punished by imprisonment in the penitentiary for a term of not more than ten years.
[2] The name of the minor witnesses are not revealed in this opinion. The initials used intentionally do not correspond to the actual initials of the witnesses.
[3] We note with interest Justice Powell's observation in Bowers to the effect that "a prison sentence for [a single private, consensual act of sodomy]  certainly a sentence of long duration  would create a serious Eighth Amendment issue." 478 U.S. at 197 (Powell, J. concurring.) Here, as there, no Eighth Amendment challenge to the sentence is raised. Moreover, the act here in question was not demonstrably consensual. Consent, or lack thereof, is not an element of the crime charged. Miss. Code Ann. § 97-29-59 (1972). D.M. denied that he consented and Miller denied that it happened.
[4] The Hinds County District Attorney's Office secured an ex parte order from a chancellor on the basis that the petitioner, a witness to a crime, would die if she continued to refuse a transfusion.
[5] The Ninth Amendment states: "The enumeration in the Constitution, of certain right, shall not be construed to deny or disparage others retained by the people."
[6] The Court echoed the established differing applications of "vagueness" and "overbreadth" in Grayned v. Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The Grayned Court held a statute is vague where the statute fails to "steer between lawful and unlawful conduct." Grayned, 408 U.S. at 108, 92 S.Ct. at 2298, 33 L.Ed.2d at 227. A statute, albeit clear and precise, may still be overbroad if it prohibits constitutionally protected conduct. Id. at 114-15, 92 S.Ct. at 2302, 33 L.Ed.2d at 231. The Court has found statutes to be simultaneously vague and overbroad. Coates v. Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217 (1971) (ordinance which prohibits "three or more persons to assemble ... on any of the sidewalks ... and there conduct themselves in a manner annoying to persons passing by" found to be vague as it "subjects the exercise of the right of assembly to an unascertainable standard" and overbroad "because it authorizes the punishment of constitutionally protected conduct.")
[7] See footnote 9.
[8] The Georgia statute at bar in Gooding stated: "Any person who shall, without provocation, use to or of another, and in his presence ... opprobrious words or abusive language, tending to cause a breach of the peace ... shall be guilty of a misdemeanor." Gooding, 405 U.S. at 519, 92 S.Ct. at 1104, 31 L.Ed.2d at 412. The Court held this language was unsuitably tailored to fit within the "fighting words" exception to protected speech in Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942), and struck the statute as overbroad.
[9] The objectionable ordinance stated: "It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest." Houston v. Hill, 482 U.S. 451, 455, 107 S.Ct. 2502, 2506, 96 L.Ed.2d 398, 408 (1987). The Court, similar to the Gooding Court, held the ordinance was facially overbroad as the proscribed language was not limited to the "fighting words" exception to First Amendment protection under Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 768-69, 86 L.Ed. 1031 (1942). Id. at 482 U.S. at 461-62, 107 S.Ct. at 2509-10, 96 L.Ed.2d at 412.