737 So.2d 385 (1998)
Steven HARRISON a/k/a Steven Paul Harrison, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00676 COA.
Court of Appeals of Mississippi.
December 8, 1998.
Rehearing Denied March 9, 1999.
Certiorari Denied June 17, 1999.
*386 Anthony J. Buckley, Laurel, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
Before BRIDGES, C.J., and HINKEBEIN, and KING, JJ.
HINKEBEIN, J., for the Court:
¶ 1. Steven Paul Harrison (Harrison) was convicted March 5, 1997, in the Circuit Court of Jones County on one count of robbery and one count of aggravated assault. On Count One of robbery he was sentenced to serve fifteen years, with three years suspended. On Count Two of aggravated assault, he was sentenced to twenty years imprisonment with five years suspended, for an aggregate sentence of twenty-seven years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, he appeals to this court on the following grounds:
I. THE COURT ERRED IN NOT GRANTING A MISTRIAL AND STRIKING THE JURY PANEL WHEN A JUROR RESPONDED, IN FRONT OF THE ENTIRE PANEL, THAT THE DEFENDANT HAD COMMITTED A CRIME AGAINST HIM.
II. THE COURT ERRED IN NOT STRIKING THE VICTIM'S TESTIMONY REGARDING HIS WIFE'S PURSE, AS SAID TESTIMONY WAS HEARSAY.
III. THE TRIAL COURT IMPROPERLY REFUSED A PEREMPTORY INSTRUCTION FOR APPELLANT AS TO THE CHARGE OF AGGRAVATED ASSAULT, AND THE VERDICT OF GUILTY OF AGGRAVATED ASSAULT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 2. Holding these assignments of error to be without merit, we affirm the judgment of the circuit court.

FACTS
¶ 3. On the night of October 25, 1996, Jack Wansley (Wansley) and his wife were alone in their Ellisville, Mississippi home. Mrs. Wansley was in the home office, working on some business contracts, and Mr. Wansley was in the den, talking to his son on a cordless phone. Shortly after eight o'clock, Wansley heard a knock at the back door. While still on the phone, he walked into the dining room and opened the door to a young man he later identified as Harrison. Wansley testified that Harrison pushed his way into the house and said unless he was given money, a supposed armed accomplice outside the door would "blow his fking head off'. Wansley ordered Harrison to get out of his house. In response, Harrison punched the older gentlemen in the face, propelling him across the dining room table to the floor. The force of the blow knocked out one of Wansley's teeth, cut his lip, and broke his glasses. *387 Wansley testified that he saw Harrison grab his wife's purse off the table and run out the door. Wansley hollered for his wife who, upon seeing his bloody face, called 911. Wansley's son also testified he heard the threat made against his father over the phone line before the connection was broken.
¶ 4. Wansley's son-in-law, who lived approximately 200 yards behind Wansley's home, gave investigators a description of the car he saw speeding out of Wansley's driveway. A car matching that description was traced to Harrison. Wansley identified Harrison from a line-up and a photograph as the man who attacked him and stole his wife's purse. At trial Harrison offered no witnesses in his defense. After hearing the evidence, the jury convicted Harrison.

I. THE COURT ERRED IN NOT GRANTING A MISTRIAL AND STRIKING THE JURY PANEL WHEN A JUROR RESPONDED, IN FRONT OF THE ENTIRE PANEL, THAT THE DEFENDANT HAD COMMITTED A CRIME AGAINST HIM.
¶ 5. During voir dire by the court, the trial judge asked the potential jurors if any of them knew Harrison. Mr. Leavelle Strickland stated he did and elaborated by commenting "[a]bout two years ago him and some more boys got my four-wheeler and truck, so I couldn't sit on the jury." The record reflects that Strickland was excused by the court. The trial judge then instructed the panel to disregard Strickland's remark and received no comment when he asked if any of them would be influenced by the comment. Harrison's motion for mistrial on the basis of Strickland's remark was denied.
¶ 6. Harrison argues that the trial court erred in not declaring a mistrial, since Strickland's statement concerning other crimes or bad acts would not have been admissible at trial and would have been grounds for reversal. He further argues that the trial court erred by not striking the entire "contaminated" jury panel. The State asserts that the trial court's curative actions prevented any prejudice to the defendant's case, and the decision not to quash the jury panel was well within the trial court's discretion. We agree with the State.
¶ 7. It is true that evidence of other crimes or bad acts is generally inadmissable. Mississippi Rule of Evidence 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
M.R.E. 404(b). As such, the admission of such evidence, if not offered for a proper purpose, might lead the jury to "believe that the defendant acted in conformity with his past crime, and such constitutes prejudice and reversible error." Townsend v. State, 681 So.2d 497, 507 (Miss. 1996). However, statements concerning a defendant's other crimes, made by prospective jurors at voir dire, while of concern, are not inevitably grounds for mistrial or reversal. Doby v. State, 557 So.2d 533, 536-7 (Miss.1990). The Mississippi Supreme Court has held that any potential prejudice flowing from a prospective juror's comment can be cured by the court instructing the panel to disregard the comment and decide the case solely on the basis of evidence presented during the trial. Hopson v. State, 625 So.2d 395, 403 (Miss.1993). In the case sub judice, the record reflects that immediately after Strickland's comment, the trial judge took the following curative steps:
THE COURT: Members of the jury, the fact that Mr.I don't know what that was, but I have asked the jurors before that any time that you have anything that might prejudice anybody in a case, *388 do not speak it out before the jurors but simply just come up here and tell me if you have a problem. Do you understand that this man here today is to be tried on this charge and nothing else that has ever happened in his lifetime anywhere before? Do y'all all understand that?
(JURORS NOD AFFIRMATIVELY)
THE COURT: I don't know what the comment was. I don't know whether a lot of you heard it or not, but can all of you tell me whatever the comment was about some activity that this man had with this particular juror, that you can put that aside and just forget about it, just like it was never said? Do all of you tell me that you can do that?
(JURORS NOD AFFIRMATIVELY)
THE COURT: Is there anyone that can't do that?
(NO RESPONSE)
Since the potential jurors all assured the court they would not be affected by the what had been said, their promise "to follow the law must be given considerable deference." Johnson v. State, 666 So.2d 784, 795 (Miss.1995) (quoting Porter v. State, 616 So.2d 899, 906 (Miss.1993)). As a result, Harrison has failed to show how the panel was tainted or how his case was prejudiced. Where the defendant is unable to show evidence of prejudice, there is "no error by the trial judge in refusing to quash the panel." Holland v. State, 705 So.2d 307 (¶ 123) (Miss.1997). In addition, "[t]he decision to declare a mistrial is within the sound discretion of the trial judge." Brent v. State, 632 So.2d 936, 941 (Miss. 1994). In order to find error in a trial judge's failure to declare a mistrial, there must be an abuse of discretion. Id. In light of the curative actions by the trial court and the response from the jury panel, we are unable to find any abuse of discretion in denying Harrison's motion for mistrial. Accordingly, we find no merit to this assignment of error.

II. THE COURT ERRED IN NOT STRIKING THE VICTIM'S TESTIMONY REGARDING HIS WIFE'S PURSE, AS SAID TESTIMONY WAS HEARSAY.
¶ 8. During the State's case, Wansley testified as to the contents of his wife's stolen purse, assessing the total value at $172. On cross-examination, Wansley admitted that his knowledge of the amount of cash in the purse was based on a conversation with his wife after the robbery, but that he had personal knowledge of other contents, such as a checkbook, calculator, and address book. Wansley's wife, who was not present during the theft of the purse, was not called as a witness by the State.
¶ 9. Harrison argues that Wansley's testimony concerning the contents of his wife's stolen purse was inadmissible hearsay, since it was not based on personal knowledge. He contends the trial court committed reversible error in refusing to strike the testimony. Harrison further asserts that since the purse and its contents were not assigned a value, an essential element of the crime of robbery was not shown. The State responds that Wansley had adequate personal knowledge to establish the purse had some value to him and his wife and that the actual value of the property was immaterial. We agree with the State.
¶ 10. The Mississippi Supreme Court has long held that "[i]n a prosecution for robbery, the property taken need not have any actual pecuniary value if it appears that it had some value to the person robbed." Richardson v. State, 168 Miss. 788, 792, 151 So. 910, 911 (1934). The check book, address book, and calculator that Wansley personally knew were in his wife's purse as well as the purse itself would easily meet the very low threshold of value set by Richardson. As a result, any hearsay testimony regarding stolen cash or other contents of the purse would be irrelevant and the failure to strike would at most be harmless error. Jones v. State, 606 So.2d 1051, 1058 (Miss.1992). *389 In addition, no particular value need be assigned to the stolen property to meet the elements of robbery. All the State needs to prove is "that something of value was taken." Bell v. State, 259 So.2d 118, 120 (Miss.1972). Since value was established in the case sub judice we find no merit to this assignment of error.

III. THE TRIAL COURT IMPROPERLY REFUSED A PEREMPTORY INSTRUCTION FOR APPELLANT AS TO THE CHARGE OF AGGRAVATED ASSAULT, AND THE VERDICT OF GUILTY OF AGGRAVATED ASSAULT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 11. Harrison argues that since Wansley was struck only once in the face and suffered only a broken tooth and cut lip, he can be guilty of no crime greater than simple assault. Harrison claims there is insufficient evidence to show he intended to cause serious bodily injury and hence does not meet the requirements of Miss.Code Ann. § 97-3-7(2) (Rev.1994). He asserts that the trial court was in error in refusing a peremptory instruction. The State responds that the issue of whether Harrison's use of his fists would meet the requirement of the statute is a question for the jury. We agree with the State.
¶ 12. Mississippi's aggravated assault statute, under which Harrison was indicted and convicted, reads as follows:
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm;
Miss.Code Ann. § 97-3-7(2) (Rev.1994). Harrison's argument appears to suggest that a single blow with a fist cannot be a "means likely to produce death or injury" and to hold otherwise would result in school yard scuffles being categorized as aggravated assault. This same issue was addressed by the Mississippi Supreme Court in Jackson v. State, 594 So.2d 20 (Miss.1992). In Jackson, the defendant was convicted of aggravated assault upon his ex-wife. Id. at 22. He claimed on appeal that his fists could not be considered deadly weapons and the charge in the indictment should have been for simple assault. Id. at 23. In Jackson, the Mississippi Supreme Court clearly stated:
We hold that whether or not hands and closed fists constitute, under § 97-3-7(2)(b), a "means likely to produce serious bodily harm" involves a question of fact to be decided by the jury in light of the evidence. The responsibility for determining likelihood remains with the jury which may be left free to give due weight to the characteristics of the parties, the place, the manner in which hands and fists are used, and the degree of force employed.
Id. at 24. The record shows that the force of Harrison's blow knocked Wansley across a table to the floor, knocked out a tooth, cut his lip, and broke his glasses. The jury in the case sub judice was also free to decide what weight would be given to the fact that Harrison, who was nineteen years old at the time of the crime, struck a much older man in his own home. We find that there was sufficient evidence from which the jury could find that Harrison's use of his fist was a means likely to produce death or serious bodily harm. Harrison makes much of the fact that Wansley was not hospitalized and suffered no broken bones. The court in Jackson held that it is not necessary "under this section for the State to prove the victim suffered `serious' bodily injury. Mere `bodily injury' is sufficient so long as it was caused with `other means likely to produce death or serious bodily harm.'" Jackson, *390 594 So.2d at 24. Since the testimony clearly shows that Wansley suffered bodily injury at Harrison's hands, we find no merit to this assignment of error.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF COUNT ONE OF ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS WITH THREE YEARS SUSPENDED; COUNT TWO OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS WITH FIVE YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES SHALL RUN CONSECUTIVE TO EACH OTHER AS WELL AS CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, KING, PAYNE, and SOUTHWICK, JJ., CONCUR.