MAXWELL, J,
 

 for the Court:
 

 ¶ 1. A jury in the Jackson County Circuit Court found Irvin Beasley guilty of touching a child for lustful purposes and sexual battery of a seven-year-old child. Beasley argues the State impermissibly commented on his initial
 
 post-Miranda
 
 refusal to speak with investigators prior to his later statement about fondling the young boy. Beasley also contends he suffered prejudice because a jury-panel member, whom the court later struck for cause, allegedly cried in the presence of the veni-re during voir dire.
 

 ¶ 2. Finding the references to Beasley’s initial refusal to speak to an investigator did not prejudice him in light of his later inculpatory statement, we find that the circuit court did not err in denying his requests for a mistrial. We also find Beasley fails to show he was prejudiced by the court’s refusal to strike the entire veni-re, given other panel members’ assurances to be fair and impartial. And we reject Beasley’s contention that the verdict was against the sufficiency and weight of the evidence and, therefore, affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. In October 2005, after watching a television program about child molestation, C.J.’s
 
 [1]
 
 mother asked her then seven-year-old son whether anyone had ever touched him inappropriately. C.J. responded that his uncle, Beasley, had.
 

 ¶ 4. Beasley lived in Ocean Springs, Mississippi, with his mother, who is C.J.’s grandmother. C.J. frequently visited his grandmother and occasionally spent the night at her house and slept in Beasley’s room. Beasley sometimes picked C.J. up from school, and according to C.J.’s mother, Beasley was alone with C.J. “quite a bit.”
 

 ¶ 5. Ocean Springs Police Officer William Jackson helped execute a search warrant at Beasley’s residence. Officers seized pornographic movies from Beasley’s bedroom. Officer Jackson described one movie as depicting “male-on-male sexual activity.” Beasley was arrested for sexual battery and advised of his
 
 Miranda
 
 rights. After taking Beasley into custody, Officer Jackson attempted to interview him. He again advised Beasley of his
 
 Miranda
 
 rights and observed Beasley execute a written waiver. According to Officer Jackson, Beasley never suggested he did not understand his rights.
 

 ¶ 6. During cross-examination by Beasley’s attorney, Officer Jackson testified that Beasley did not initially provide a statement. As Officer Jackson put it, “[Beasley] didn’t want to talk. He didn’t say anything.” When the State followed up on redirect, Officer Jackson reiterated that initially Beasley “wouldn’t say anything to me, just gave me a blank stare.”
 

 ¶ 7. The next day, Officer Ray Akins obtained an oral statement from Beasley. Officer Akins recorded the interview, which included him reading Beasley his
 
 Miranda
 
 rights and Beasley acknowledging that he understood those rights. Beasley also agreed that no promises or threats had been made against him, nor was he under any pressure or coercion.
 
 *360
 
 In his recorded statement, Beasley admitted touching C.J.’s penis underneath his clothes and that C.J. also touched Beasley’s penis. But Beasley denied that either performed “oral sex” on the other. Beasley also denied showing C.J. pornographic material but admitted hearing C.J. had viewed pornography. In December 2006, a Jackson County grand jury returned an indictment charging Beasley with the sexual battery and fondling of C.J.
 

 ¶ 8. C.J. was ten years old when he testified at trial. Using an anatomically correct drawing of a male child, C.J. identified the parts of his body that Beasley had touched. When asked to specifically identify where Beasley touched him, C.J. circled the penis and buttocks. C.J. testified Beasley touched him in these areas both inside and outside of his clothing on many separate occasions.
 

 ¶ 9. C.J. explained that Beasley put his mouth “around where my legs are.” When asked to place an “X” around the area Beasley touched with his mouth, C.J. marked the penis on the drawing. According to C.J., Beasley had shown him a movie with “grown up” men doing the “same thing” Beasley did to him. And Beasley forced C.J. to perform “the same thing” on him.
 

 ¶ 10. Beasley testified in his own defense and denied ever doing “anything sexually” to C.J. or requesting the same to be done to him.
 

 ¶ 11. After a two-day trial, the jury found Beasley guilty of fondling and sexual battery. The circuit court sentenced Beasley to ten years on the fondling charge and twenty-five years on the sexual-battery charge, with the sentences to run consecutively. Beasley filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which the court denied. Beasley appeals claiming: (1) the State violated his right against self incrimination by referencing his initial refusal to give a statement to law enforcement; (2) he is entitled to a new trial based on a potential juror crying during voir dire; and (3) the verdict was not supported by sufficient evidence or is against the weight of the evidence.
 

 DISCUSSION
 

 I. Post-Miraneia Silence
 

 ¶ 12. Beasley argues the circuit court erred in denying his requests for a mistrial after the State impermissibly commented on his
 
 post-Miranda
 
 silence. The complained of comments, which occurred first during the State’s opening statement and later during Officer Jackson’s testimony, referred to Beasley’s initial refusal to speak to law enforcement before he decided to provide an inculpatory statement admitting he fondled C.J.
 

 ¶ 13. The Fifth Amendment to the United States Constitution provides: “No person ... shall be compelled in any criminal case to be a witness against himself[.]” The Fourteenth Amendment incorporates this right to the states.
 
 Chamberlin v. State,
 
 989 So.2d 320, 332 (¶ 35) (Miss.2008). The applicable provision in the Mississippi Constitution essentially mirrors the federal right: “In all criminal prosecutions the accused ... shall not be compelled to give evidence against himself[.]” Miss. Const, art. 3, § 26.
 

 ¶ 14. During its opening statement, the State mentioned that Officer Jackson attempted to interview Beasley, but Beasley “at that time would not talk to him.” Defense counsel objected and requested a mistrial, which the circuit court denied. The State then continued by explaining that Officer Akins would testify that Beasley confessed to “molesting, touching,
 
 *361
 
 [and] fondling [C.J.]” as charged in Count One.
 

 ¶ 15. Later, during the cross-examination of Officer Jackson, defense counsel asked the officer about his attempts to interview Beasley. In response, Officer Jackson explained that “[o]n the first interview [Beasley] didn’t want to talk. He didn’t say anything.” During redirect, the State further inquired about Beasley’s initial refusal to provide a statement. When asked what the tape of his interview with Beasley depicted, Officer Jackson explained: “It’s only me reading him his
 
 [Miranda
 
 ] warning and the pre-interview sheet and trying to get him to talk. He wouldn’t say anything to me, just gave me a blank stare.” Defense counsel objected to the response about Beasley’s refusal to talk during his initial interview and again moved for a mistrial. The circuit court overruled the objection and denied the request for a mistrial.
 

 ¶ 16. The United States Supreme Court has held that improper comments about a defendant’s
 
 post-Miranda
 
 silence may deprive a criminal defendant of his or her right to due process.
 
 See Doyle v. Ohio,
 
 426 U.S. 610, 611, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). “[D]etailed conversation relating to
 
 Miranda
 
 warnings ordinarily ought not be admitted into evidence if no statement is given.”
 
 United States v. Two Bulls,
 
 577 F.2d 63, 66 (8th Cir.1978).
 

 ¶ 17. Mississippi courts have not specifically addressed whether a prosecutor or government agent’s comments about a suspect’s initial
 
 post-Miranda
 
 refusal to speak amount to due-process violations where the defendant ultimately gives an inculpatory statement. However, federal courts have held that certain “atypical” situations permit the admission of such evidence depending on either: (1) the context of the refusal or (2) whether the vol-untariness of a later statement is contested.
 
 See United States v. Martinez,
 
 577 F.2d 960, 963 (5th Cir.1978);
 
 Two Bulls,
 
 577 F.2d at 66.
 

 ¶ 18. In
 
 Martinez,
 
 a defendant moved for a mistrial after a government agent testified about the two defendants’ initial refusals to provide statements after being advised of their
 
 Miranda
 
 rights. 577 F.2d at 963. The district court denied the request for a mistrial reasoning there was nothing impermissible considering the context of the agent’s testimony.
 
 Id.
 
 One defendant appealed claiming “the testimony constituted an impermissible comment on silence after
 
 Miranda
 
 warnings.”
 
 See Doyle,
 
 426 U.S. 610, 96 S.Ct. 2240;
 
 United States v. Hale,
 
 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). The United States Court of Appeals for the Fifth Circuit found the district court’s “percipience was confirmed at trial” when the agent also testified about statements the defendants later made.
 
 Martinez,
 
 577 F.2d at 963. The Fifth Circuit reasoned that because the defendants had given subsequent statements, the testimony about their initial refusal to speak “could not have carried with it the kind of comment on silence ... condemned in
 
 Doyle
 
 and
 
 Hale.” Id.
 

 ¶ 19. In
 
 Two Bulls,
 
 the defendant, like Beasley, sought to exclude his inculpatory statement as involuntarily given. 577 F.2d at 66. The district court conducted a suppression hearing and found the contested statement was voluntarily made.
 
 Id.
 
 On appeal, the defendant argued the district court erred in admitting testimony about his initial refusal to provide any statement.
 
 Id.
 
 The Eight Circuit Court of Appeals rejected this argument finding that the particular case presented “an atypical situation because a later inculpatory statement was properly admitted into evidence.”
 
 Id.
 
 The court reasoned that “the jury may hear evidence on the question of voluntariness to enable it to determine what weight
 
 *362
 
 should be given the admission” and that “the issue of voluntariness continued throughout the trial....”
 
 Id.; see also United States v. Gallegos,
 
 738 F.2d 378, 383 (10th Cir.1984) (finding no reversible error in prosecutor’s references to defendant’s invocation of his right to counsel because exercising this right may refute the inference that his later statement was involuntary).
 

 ¶ 20. In considering the context of the State’s comments here, we find the prosecutor’s statement and the officer’s testimony about Beasley’s prior refusal to speak was simply a recitation of the facts concerning a preceding interview. We draw from
 
 Martinez
 
 and hold that given Officer Akin’s testimony about Beasley’s later confession, Beasley was not prejudiced by comments about his earlier refusal to speak.
 

 ¶ 21. Further, like the defendant in
 
 Two Bulls,
 
 before trial, Beasley moved to suppress his interview arguing it was involuntarily given. The circuit court disagreed and admitted his inculpatory statement finding it was voluntarily made. Though Beasley does not raise the admission of his inculpatory statement as error on appeal, his defense at trial was partially based on alleged threats and coercion surrounding his statement to police. Thus, he placed the voluntariness of his inculpatory statement at issue. Because initially exercising the right to remain silent “may refute the inference that a later statement was involuntary,” we do not find the circuit court erred in refusing to grant Beasley’s requests for a mistrial.
 
 See Two Bulls,
 
 577 F.2d at 66.
 

 ¶ 22. Even assuming a
 
 Doyle
 
 violation, the Supreme Court has held that any error in permitting a prosecutor to comment on the defendant’s right to remain silent is subject to harmless-error review.
 
 See Brecht v. Abrahamson,
 
 507 U.S. 619, 629-30, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The proper inquiry turns on whether, absent the government’s improper statements, it is clear beyond a reasonable doubt that the jury would have found the defendant guilty in any event.
 
 Id.
 
 (citing
 
 Chapman v. California,
 
 386 U.S. 18, 22, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). If this is clear, the error is harmless, and the defendant’s conviction should not be reversed.
 
 See id.
 
 At trial, C.J. provided anatomical identifications and testified about Beasley’s sexual assaults and multiple impermissible touchings. The State also offered Beasley’s later admission about fondling C.J.
 

 ¶ 23. Based on the overwhelming evidence of Beasley’s guilt, we find the comments here — even if deemed to violate
 
 Doyle
 
 — amount to at most harmless error. Accordingly, the circuit court did not abuse its discretion in denying Beasley’s requests for a mistrial.
 

 II. Prejudice from Juror-Panel Member Crying
 

 ¶ 24. Beasley also seeks a new trial arguing the conduct of a member of the jury panel (Juror 28) engendered bias and prejudice against him from the outset of the trial.
 

 ¶ 25. During voir dire, the trial judge informed the jury panel that Beasley was charged with fondling and sexual battery of a child. The judge asked panel members if, knowing the nature of the case, they could be fair and impartial. Juror 28 responded that she could not. At some point, she allegedly became emotional and started crying. Defense counsel later posited that Juror 28 “started crying [a while] ago ... [and is] apparently continuing to cry and dabbing her eyes.” The judge responded, “She looks fine to me ... I’m not going to single her out and throw her
 
 *363
 
 off the jury panel.... If it gets worse, I’ll consider it.”
 

 ¶ 26. The judge later struck Juror 28 for cause. Defense counsel then moved to also strike Jurors 27 and 29 — who sat beside Juror 28 — for “consoling” Juror 28. But defense counsel admitted not knowing “if she’s told them anything or what she said to them.” The judge denied the challenge. Defense counsel then moved to strike the entire venire alleging that the disruption was worsened because “a bailiff got her [a] tissue.” The court denied this request as well. Following voir dire, the State exercised peremptory challenges to strike Jurors 27 and 29.
 

 ¶ 27. Beasley argues the voir dire was laden with errors, which require reversal. First, he contends the judge should have immediately ordered Juror 28 to exit the courtroom. Second, Beasley claims that following the alleged display, the judge should have given a curative instruction to limit the effect of Juror 28’s actions. Third, Beasley contends the judge should have specifically inquired into the ability of the potential jurors to disregard her alleged disruption. Finally, Beasley argues the trial court should have granted his motion to strike the jury panel.
 

 ¶ 28. We review a trial court’s refusal to quash a jury panel or declare a mistrial under an abuse-of-discretion standard.
 
 Hopson v. State,
 
 625 So.2d 395, 403 (Miss.1993) (holding modified on other grounds) (“[0]nce the trial judge is satisfied that the potential jurors are without prejudice that would prevent them from being fair and impartial jurors, it is within the discretion of the court to make the final determination as to whether the panel should be quashed.”);
 
 Lenard v. State,
 
 828 So.2d 232, 235 (¶ 8) (Miss.Ct.App.2002);
 
 Harrison v. State,
 
 737 So.2d 385, 387-88 (¶¶ 6-7) (Miss.Ct.App.1998). To obtain reversal based on a trial court’s refusal to quash a jury panel or grant a mistrial, the defendant must show prejudice.
 
 Harrison,
 
 737 So.2d at 388 (¶ 7) (citing
 
 Holland v. State,
 
 705 So.2d 307, 340 (¶ 123) (Miss.1997));
 
 Evans v. State,
 
 725 So.2d 613, 649 (¶¶ 116-17) (Miss.1997).
 

 ¶ 29. In
 
 Hopson,
 
 the Mississippi Supreme Court considered a potential juror’s comment that she would find the accused guilty if she served on the jury.
 
 Hopson,
 
 625 So.2d at 402. The court essentially told her that she should not have made the comment and instructed her to be seated.
 
 Id.
 
 Defense counsel asked the panel if anyone else felt the same way and received no response.
 
 Id.
 
 at 403. Defense counsel later moved to quash the entire panel based on the comment, which the trial court denied.
 
 Id.
 
 The supreme court found the trial court did not abuse its discretion in refusing to strike the panel because defense counsel’s follow-up question and the court’s admonishment cured any prejudice the defendant may have suffered.
 
 Id.
 

 ¶ 30. In
 
 Evans,
 
 a venire member indicated “she would be uncomfortable and unable to serve as a juror because she found ‘it very difficult to be in the same room with [the defendant].’ ”
 
 Evans,
 
 725 So.2d at 649 (¶ 112). Following this remark, the district attorney asked the panel whether the comment would affect their ability to be fair. The rest of the panel indicated that it would not.
 
 Id.
 
 The supreme court found the failure to quash the venire or grant a mistrial was not an abuse of discretion despite the trial court’s failure to instruct the venire to disregard the comment.
 
 Id.
 
 at 649 (¶ 117). The supreme court reasoned, “[t]he follow-up question by [the district attorney] clearly disclosed that ‘no juror felt or believed that the statement made would prejudice him or prevent him from being a fair and
 
 *364
 
 impartial juror.’ ”
 
 Id.
 
 (quoting
 
 Hopson,
 
 625 So.2d at 403).
 

 ¶ 31. Here, following the court’s voir dire, the trial court admonished the venire as follows:
 

 [Ujnder your oath as jurors[,] you are required to follow the law regardless of any personal feeling you may have either as to what the law is or what it ought to be. You have to follow it. Can you all tell me that you will do that? You will decide the facts and then apply the law as I give it to you? You all say that you can do that.
 

 So, is there anything that I have said to you this morning that makes anyone, other than those of you who have already raised your hand, feel like you just could not be fair and impartial in this type of case or in this case in particular? You all tell me that you could be? All right.
 

 The record does not show any panel member indicated he or she was biased or could not be fair and impartial for any reason. Similarly, the assistant district attorney later asked whether venire members could be fair and impartial in a child sexual abuse case. He further inquired if they could agree that sympathy for the victim should not enter into their decision. The record indicates the members of the venire assented to perform their duties in an impartial manner if selected to serve as jurors.
 

 ¶ 32. Jury panel members’ “promise[s] to follow the law must be given considerable deference.”
 
 Harrison,
 
 737 So.2d at 388 (¶ 7) (internal quotation marks omitted). Here, the trial court struck panel members who stated they could not be fair and impartial. It also directly questioned those who remained on the panel about their ability to be fair and impartial. No juror indicated any prejudice or bias. Because Beasley fails to show any resulting prejudice, we find the trial court did not abuse its discretion in refusing to strike the venire or grant a mistrial.
 

 III. Sufficiency and Weight of the Evidence
 

 ¶ 33. Beasley argues his sexual-battery conviction is not supported by sufficient evidence or the weight of the evidence. When addressing the legal sufficiency of evidence, we consider all evidence in a light most favorable to the State.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005). Credible evidence consistent with guilt must be accepted as true. The State receives the benefit of all favorable inferences reasonably drawn from the evidence.
 
 Jones v. State,
 
 20 So.3d 57, 64 (¶ 16) (Miss.Ct.App.2009) (citing
 
 Hughes v. State,
 
 983 So.2d 270, 275-76 (¶¶ 10-11) (Miss.2008)). The jury resolves matters of weight and credibility. Reversal is proper when reasonable and fair-minded jurors could only find the accused not guilty.
 
 Id.
 
 Our primary duty in considering the sufficiency of the evidence is to determine whether from the evidence presented, it would be impossible for a reasonable juror to find the defendant guilty.
 
 Ducksworth v. State,
 
 767 So.2d 296, 301 (¶ 10) (Miss.Ct.App.2000).
 

 ¶ 34. The standard differs slightly when reviewing a claim based on the weight of the evidence challenging a trial court’s denial of a motion for a new trial. Under this standard, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844 (¶ 18). We evaluate the evidence in the light most favorable to the verdict.
 
 Id.
 
 And we are required to accept as true all evidence consistent with the defendant’s guilt, along with any reason
 
 *365
 
 able inferences that might be drawn from the evidence.
 
 Young v. State,
 
 891 So.2d 813, 821 (¶ 21) (Miss.2005). “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.”
 
 Bush,
 
 895 So.2d at 844 (¶ 18).
 

 ¶ 35. Beasley was convicted of touching a child for lustful purposes, or fondling, and sexual battery. Beasley only challenges the sufficiency and weight of the evidence regarding sexual battery and, therefore, waives these issues as to fondling. Waiver aside, his inculpatory statement coupled with C.J.’s testimony, which we address below, show his fondling conviction was supported by the sufficiency and weight of the evidence.
 

 ¶ 36. Under Mississippi Code Annotated section 97 — 3—95(l)(d) (Rev.2006), a defendant is guilty of sexual battery if he “engages in sexual penetration with ... [a] child under the age of fourteen (14) years of age” and “is twenty-four (24) or more months older than the child.” The term “ ‘[s]exual penetration’ includes cunnilingus, fellatio, buggery or pederasty, [and] any penetration of the genital or anal openings of another person’s body by any part of a person’s body[.]” Miss.Code Ann. § 97-3-97(a) (Rev.2006). The age requirements of the statute were met, since at the time of the offense, Beasley was forty-two years old and C.J. was seven. Thus, our sole inquiry turns on whether the State proved the element of “sexual penetration.”
 

 ¶ 37. “Penetration is the very essence of the crime of sexual battery.”
 
 Johnson v. State,
 
 626 So.2d 631, 632 (Miss. 1993). “[P]roof of contact, skin to skin, between a person’s mouth, lips, or tongue and the genital opening of a woman’s body, whether by kissing, licking, or sucking, is sufficient proof of sexual penetration.”
 
 Hennington v. State,
 
 702 So.2d 403, 408 (¶ 17) (Miss.1997) (internal quotation marks omitted). This standard applies to “all persons regardless of the gender of the victim or the perpetrator.”
 
 Id.
 
 Further, the supreme court has instructed:
 

 Sexual penetration ... [includes] fellatio or any penetration of the genitalia by any part of a person’s body. This Court [has] specifically stated that fellatio does involve penetration.... “Fulfillment of the sodomy penetration requirement is not restricted to acts wherein the accused does the penetrating. We hold that an act of fellatio performed by the accused is an act proscribed by the statute.”
 

 Id.
 
 at (¶ 18) (quoting
 
 Miller v. State,
 
 636 So.2d 391, 396 (Miss.1994)) (internal citation omitted).
 

 ¶ 38. The only witness to testify directly regarding sexual penetration was C.J. Beasley asserts that C.J.’s “vague,” “inconclusive,” and “uncorroborated” testimony is inadequate to support a guilty verdict on the sexual-battery charge.
 

 ¶ 39. But even uncorroborated testimony of a sex-crime victim is legally sufficient to support a conviction.
 
 McDonald v. State,
 
 816 So.2d 1032, 1034 (¶ 7) (Miss.Ct.App.2002) (citing
 
 Collier v. State,
 
 711 So.2d 458, 462 (¶ 18) (Miss.1998));
 
 see also Lattimer v. State,
 
 952 So.2d 206, 224 (¶55) (Miss.Ct.App.2006). It is well settled that “[t]he jury determines the weight and credibility to give witness testimony and other evidence.”
 
 Moore v. State,
 
 933 So.2d 910, 922 (¶ 43) (Miss.2006). Appellate courts “may not pass upon the credibility of witnesses[.]”
 
 Id.
 
 If the evidence justifies a verdict, we must accept it “as having been found worthy of belief.”
 
 Id.
 
 (internal quotation marks omitted).
 

 ¶40. When asked to draw an “X” where Beasley put his mouth, C.J. drew an
 
 *366
 
 “X” on the penis on an anatomically-correct drawing of a male child, which was admitted into evidence. The record shows the State projected the drawing with C.J.’s marking onto a viewing screen. The prosecutor again asked C.J. if the location where he drew an “X” was where Beasley had “touched ... with his mouth,” and C.J. acknowledged it was. When asked whether Beasley ever made him “do anything with [Beasley’s] private parts,” C.J. responded that Beasley made him do “[t]he same thing.”
 

 ¶ 41. We find C.J.’s illustrations and related testimony neither vague nor inconclusive. When considered in the light most favorable to the State and in concert with C.J.’s testimony that Beasley had shown him a film of “grown up” men doing the “same thing” that Beasley did to him, we find the evidence quite sufficient to sustain a conviction based on fellatio-based sexual battery. These specific illustrations and related testimony also convince us that the verdict is not against the overwhelming weight of the evidence. Under sections 97 — 3—95(l)(d) and 97-3-97(a), and the case law interpreting the element of “sexual penetration,”
 
 see Hennington,
 
 702 So.2d at 408 (¶ 17), we conclude the verdict must stand. We decline the invitation to reweigh testimony or make witness-credibility determinations, which are within the sole province of the jury.
 

 ¶ 42. For these reasons, we affirm.
 

 ¶ 43. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, TOUCHING A CHILD FOR LUSTFUL PURPOSES, AND SENTENCE OF TEN YEARS; AND COUNT II, SEXUAL BATTERY, AND SENTENCE OF TWENTY-FIVE YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $5,000 FINE ON EACH COUNT FOR A TOTAL OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.
 

 [1]
 

 . We use initials to protect the anonymity of the child victim.