IRVING, P.J.,
for the Court:
¶ 1. A Coahoma County jury convicted Ricky Shannon Pierce of sexual battery. The circuit court sentenced Pierce, as a habitual offender, to thirty years in the custody of the Mississippi Department of Corrections, without eligibility for parole or probation. Pierce filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied. Feeling aggrieved, Pierce appeals and argues that the evidence is insufficient to sustain his sexual-battery conviction. We disagree; therefore, we affirm.
FACTS
¶ 2. Pierce and H.H.[1] had communicated over the phone multiple times prior to the day of the incident giving rise to Pierce’s conviction. On the day of the incident, H.H. called Pierce, and Pierce asked if he could come to H.H.’s house to visit him. H.H. agreed, and told Pierce where he and his parents lived. Around midnight, Pierce located H.H.’s home and parked across the street from the house. Pierce told H.H. to come outside and to go around to the back of the house, which H.H. did. When H.H. met Pierce at the back of the house, Pierce began kissing him in the mouth. H.H. told Pierce that he was scared. Pierce then pulled down H.H.’s pants and licked his penis. H.H. told Pierce to stop and pulled his pants back up. Pierce then licked H.H.’s naval, grabbed H.H.’s foot, put it in his mouth, and tried to bite it.
¶ 3. Following the incident, Pierce started texting and calling H.H. Initially, H.H. did not respond to Pierce’s texts and phone calls. However, H.H. eventually talked to Pierce, who told him not to tell his parents about what happened. But H.H. had already done so, as he told his parents on the morning after the incident what had happened with Pierce.
¶4. During the trial, the prosecutor asked H.H. if he gave Pierce permission to kiss him or suck on his private parts, and H.H. responded that he did not. H.H. further testified that he was “telling [Pierce] to stop” throughout the incident.
*208 ¶ 5. Officer Romeisha Moore, with the Clarksdale Police Department, testified that on the night of the incident, she received a call around midnight about a suspicious vehicle parked on the street where H.H. lived. She stated that she was about to have the vehicle towed when Pierce, who had been sitting out on a nearby lawn with another male, walked from across the street to her vehicle. Officer Moore noted that when Pierce approached her, he seemed nervous and was sweating profusely. She added that once she told him to move his vehicle, he told her that he would move it and got in his vehicle.
¶ 6. Detective Nicholas Turner, also with the Clarksdale Police Department, testified that phone records, which he obtained during the investigation, showed several phone calls between H.H. and Pierce prior to the incident. He also stated that approximately ten calls between H.H. and Pierce were made after midnight on the night of the incident, with one call lasting for sixty-one minutes.
¶ 7. Pierce denied that anything happened between him and H.H. on the night of the incident. He stated that on that night, H.H. called him, and Pierce asked H.H. if he could come over to H.H.’s house. He testified that after H.H. agreed, he went to H.H.’s house and they just sat outside of the house and talked until Officer Moore arrived and asked him to move his vehicle. To explain his nervousness and sweating, Pierce testified that he suffers with tremors, which cause him to sweat and shake when he is in a hot environment.[2] Pierce stated that he left H.H.’s house after Officer Moore asked him to move his vehicle. He also stated that, “from the phone records, [he] noticed that [there were] six calls placed by [H.H.] after [he] left. Three that night, and three the next day.”
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 9. Pierce claims that the evidence is insufficient to support a sexual-battery conviction. When determining whether evidence is sufficient to sustain a conviction, “the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed”; otherwise, the evidence is insufficient to support the verdict. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)) (internal quotation marks omitted). The evidence is viewed in the light most favorable to the prosecution. Id.
¶ 10. Pierce first argues that the State failed to prove the lack-of-consent element of sexual battery. He claims that H.H. did not tell him to stop until after he licked H.H.’s penis, meaning that everything that occurred prior to H.H.’s telling him to stop was consensual and that nothing that occurred after that constituted sexual battery. Mississippi Code Annotated section 97-3-95(l)(a) (Rev.2006) provides that “[a] person is guilty of sexual battery if he or she engages in sexual penetration with ... [a]nother person without his or her consent[.]” It is undisputed that Pierce’s conduct with H.H. constitutes sexual penetration. See, e.g., Beasley v. State, 74 So.3d 357, 365 (¶ 37) (Miss.Ct.App.2010). The Mississippi Supreme Court has held that the “unsubstantiated and uncorroborated testimony of a victim [of a sex crime] is sufficient to *209 support a guilty verdict if that testimony is not discredited or contradicted by other credible evidence[.]” Price v. State, 898 So.2d 641, 651 (¶ 23) (Miss.2005). H.H. testified that he never gave Pierce consent to lick his penis and that he was telling him to stop throughout the incident. Therefore, although H.H.’s testimony is unsubstantiated and uncorroborated, it supports the lack-of-consent element of Pierce’s sexual-battery conviction, as his testimony was not discredited or contradicted by other credible evidence.
¶ 11. Pierce also argues that H.H.’s testimony alone is insufficient to support the sexual-battery conviction because H.H.’s testimony was contradicted by: (1) Detective Turner’s testimony; (2) the lack of evidence that Pierce used force, violence, threats, or intimidation to coerce consent; (3) the lack of evidence or testimony that H.H. resisted; (4) the lack of physical evidence; (5) the lack of medical testimony to support H.H.’s testimony; (6) the lack of evidence that Pierce made in--criminating statements; and (7) the lack of other witnesses or evidence that corroborated H.H.’s lack of consent.
¶ 12. Pierce claims that Detective Turner’s testimony regarding the phone records[3] showing the phone calls made between H.H. and Pierce contradict H.H.’s testimony that Pierce had repeatedly called H.H. immediately after the incident “to request that he keep the incident quiet.” However, while Detective Turner testified as to the number of phone calls made between H.H.’s cellular phone and Pierce’s cellular phone, he did not testify to the content of the conversations between H.H. and Pierce. Therefore, Detective Turner’s testimony did not contradict H.H.’s testimony.
¶ 13. Further, Pierce’s other claims of contradictory testimony or evidence are merely claims of lack of evidence. The supposition that the absence of evidence can be contradictory is nonsensical. Moreover, we have held that evidence of force and evidence of reasonable apprehension of force are not necessary elements of sexual battery. Brink v. State, 888 So.2d 437, 449 (¶ 33) (Miss.Ct.App.2004). Additionally, the existence of physical evidence is not a prerequisite to sustaining a conviction of sexual battery. Musgrove v. State, 866 So.2d 483, 485 (¶ 5) (Miss.Ct.App.2003). Likewise, there is no requirement that evidence of sexual battery has to be corroborated and supported by medical evidence, testimony of other witnesses on the issue of consent, or incriminating statements of the defendant before a conviction for the offense will be allowed to stand. As stated, H.H.’s testimony alone is enough to sustain the conviction. Accordingly, we find that there is sufficient evidence to support Pierce’s sexual-battery conviction.
¶ 14. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE, AS A HABITUAL OFFENDER, OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Due to the nature of the case, we use the victim's initials instead of his full name.

. The incident occurred in July 2011.

. The phone records were marked for identification but not entered into evidence.