BARNES, J.,
for the Court:
¶ 1. Larry N. Jenkins, Jr. was convicted by a jury in the Bolivar County Circuit Court on two counts of sexual battery and two counts of fondling. Jenkins, a habitual offender, received maximum sentences on each count, resulting in ninety years in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation.[1] On appeal, we affirm Jenkins’s convictions for the two counts of fondling and one count of sexual battery. However, we reverse and render the judgment for the remaining count of sexual battery, finding there is insufficient evidence to support the verdict.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Jenkins and his wife, “Judy,” married in 1990 and had a daughter, “Bonnie,” who was born in 1992.[2] The couple divorced when Bonnie was a few months old, but they reconciled six years later, remarried, and had two more daughters.[3] The family lived in Tupelo, Mississippi, until 2007, when they moved to Cleveland, Mississippi, so Judy could attend college. Jenkins was unemployed due to a disability-
¶ 3. According to Judy, Jenkins was “domineering” and “very strict.” Even though Bonnie was sixteen years old, he did not allow her to go on dates. On September 19, 2008, Bonnie attended a friend’s birthday party. Jenkins insisted on accompanying her to the party and staying the entire time. At one point during the party, Jenkins told some boys that Bonnie was his “baby” and to leave her alone. On the ride home later that evening, Jenkins said that Bonnie “owed” him for letting her go to the party, and he reached up her shirt and lifted up her bra. He also put his hand inside her panties, and he continued to touch her throughout the twenty-minute ride back to their house.
¶ 4. Shortly thereafter, on the evening of October 11, 2008, Bonnie and Jenkins attended a local street festival while Judy stayed home with the younger children. Jenkins and Bonnie’s uncle were drinking beer, and Jenkins became inebriated. Jenkins and Bonnie left the festival after midnight. On the way home, Jenkins reached over, put his hand underneath her bra, and touched Bonnie’s breast. He told Bonnie that he wanted her to put on some “little shorts” that he had bought her when they got home. However, when they arrived home, Judy was awake; therefore, nothing further occurred.
¶ 5. A few months later, on February 22, 2009, Bonnie was alone with Jenkins while *164 her mother and siblings were at church. According to Bonnie, Jenkins came into her room and said he wanted to play with her “P word” and that he wanted to take her virginity, but she refused. Jenkins pushed her on the bed, pulled off her pants and underwear, and attempted to penetrate her. Bonnie fought back but Jenkins pulled her towards him and inserted his fingers in her vagina.
¶ 6. Later that week, Bonnie told her friend and friend’s mother what had happened, and they advised her to tell her mother. On March 3, 2009, Bonnie informed her mother that Jenkins had been molesting her since she was eight years old.[4] She finally told her mother because “it was getting to the point where it was going too far.” Judy immediately confronted Jenkins, who denied the allegations. In shock, Judy left the house to pick up a movie rental, leaving the children with Jenkins. Judy claimed she was concerned what Jenkins would do if he suspected she did not believe him. While she was gone, Jenkins went into Bonnie’s room and broke her cell phone, saying he was not going to spoil her if she made such accusations against him. When Judy returned, Jenkins left the house to get some cigarettes. Judy called the Cleveland Police Department, who came to the house and talked with Bonnie. The Department of Human Services (DHS) was contacted, and Judy left the house with the girls. Jenkins arrived home to an empty house, and when he could not reach Judy on her cell phone, he took pills in an attempt to commit suicide. However, he quickly called 911 for assistance and was taken to the hospital. He was arrested a few days later in Tupelo while staying with family.
¶ 7. After an investigation, Jenkins was indicted on three counts of fondling and two counts of sexual battery. At a jury trial in the Bolivar County Circuit Court, Jenkins was convicted of Count I, fondling, and Count II, sexual battery, which referenced the events of September 19, 2008. He was also convicted on Count IV, fondling, concerning the incident on October 11, 2008, and on Count V for sexual battery, for the incident on February 22, 2009. He was acquitted of the fondling charge in Count III, which encompassed the time period from September 20, 2008, to October 10, 2008. The circuit court sentenced Jenkins as a habitual offender to fifteen years in the custody of the MDOC for each count of fondling, and thirty years for each count of sexual battery. All sentences were ordered to run consecutively, for a total of ninety years.
¶ 8. Jenkins filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. On appeal, Jenkins asserts several assignments of error. We affirm the circuit court’s judgment for the convictions and sentences imposed on Counts I, IV, and V. However, we reverse and render the judgment on Count II, sexual battery, finding that there was insufficient evidence at trial to support the verdict.
I. Whether the indictment provided Jenkins with adequate notice.
¶ 9. The indictment charged Jenkins with fondling under Mississippi Code Annotated section 97-5-23(2) (Rev.2006), and alleged that Jenkins “did unlawfully, wilfully, and feloniously, for the purpose of gratifying his lust, or indulging his depraved licentious sexual desires, handle, touch or rub with his hands the private parts of [Bonnie], a female child under the *165 age of eighteen (18) yearsf.]” Jenkins claims the indictment’s use of the term “private parts” in its charges for fondling “is woefully inadequate and fail[s] to satisfy the notice requirements under the statute.”
¶ 10. “The law is clear that where an indictment tracks the language of the statute, the indictment sufficiently puts the defendant on notice of the charges against him in order to prepare his defense.” Hicks v. State, 40 So.3d 640, 642 (¶ 9) (Miss.Ct.App.2010) (quoting Miller v. State, 18 So.3d 898, 908 (¶ 43) (Miss.Ct.App.2009)). Section 97-5-23(2) states:
Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the age of eighteen (18) years who is not such person’s spouse, with or without the child’s consent, when the person occupies a position of trust or authority over the child shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court. A person in a position of trust or authority over a child includes without limitation a child’s teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.
(Emphasis added).
¶ 11. Jenkins never filed any objection to the form of the indictment. Any alleged defect in the form of an indictment, which is “curable by amendment, ... is considered waived by the failure to file a demurrer to the indictment.” Frei v. State, 934 So.2d 318, 325 (¶ 16) (Miss.Ct.App.2006). Notwithstanding, we cannot see where the use of the term “private parts” prevented Jenkins from being fully advised and aware of the charges against him. The language in the statute actually has broader terminology than the language contained in the indictment. We find this assignment of error without merit.
II. Whether the circuit court erred by denying Jenkins’s motion for a JNOV because there was insufficient evidence to support a verdict for sexual battery.[5]
¶ 12. In a motion for a JNOV, the sufficiency of the evidence is challenged. McBride v. State, 61 So.3d 174, 183 (¶ 29) (Miss.Ct.App.2010) (citing Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)). “When addressing the legal sufficiency of evidence, we consider all evidence in a light most favorable to the State.” Beasley v. State, 74 So.3d 357, 364 (¶ 33) (Miss.Ct.App.2010) (citing Bush, 895 So.2d at 843 (¶ 16)). “The critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ” McBride, 61 So.3d at 183 (¶ 29) (quoting Bush, 895 So.2d at 843 (¶ 16)).
*166 ¶ 13. Jenkins contends there was insufficient evidence to support his conviction for Count II, sexual battery, as there was no proof of penetration in relation to the September 19, 2008 incident. The instruction given to the jury for Count II charged the jury with finding, beyond a reasonable doubt, whether Jenkins “engage[d] in sexual penetration by inserting his hand and/or finger into the genital opening or vagina of [Bonnie].”
¶ 14. Mississippi defines sexual penetration to include “cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person’s body by any part of a person’s body, and insertion of any object into the genital or anal openings of another person’s body.” Miss.Code Ann. § 97-3-97(a) (Rev.2006) (emphasis added). “Penetration is the very essence of the crime of sexual battery.” Johnson v. State, 626 So.2d 631, 632 (Miss.1993) (citing Thompson v. State, 468 So.2d 852, 853 (Miss.1985)). Even slight penetration of the vulva or labia is sufficient to constitute penetration. Id. at 633.
¶ 15. Regarding the September 19, 2008 incident, Bonnie testified on direct examination that Jenkins had his hand inside her panties.
Q. What about the panties, were they under, over, or where as far as the panties?
A. Inside.
Q. Okay. And was he doing anything else at the time he was touching you?
A. He was just moving his hand, but—
Q. On you or on himself.
A. On me.
[[Image here]]
Q. Okay. Now when he had his hands, you said under your panties, how far, [Bonnie], did his hand go?
A. Just right there, the top part I guess you’d call it.
Q. And you do understand what I need, I need you to elaborate more. Do you know what I mean?
A. Yes, ma’am. He didn’t go up any farther inside, just on the outside.
Q. Okay. Just on the outside?
A. Yes, ma’am.
On cross examination, Bonnie testified:
Q. Okay. Now, you stated, at one point, that your dad’s hands were in your pants on the way home from that party?
A. Yes, ma’am.
Q. During your testimony; is that correct?
A. Yes, ma’am.
Q. Do you remember testifying to whether he stuck his hands or finger in your vagina on the trip home?
A. Yes, ma’am.
Q. And did he do that?
A. He put his hand in my pants.
Q. Inside your pants?
A. Yes, ma’am.
Q. Did he put his finger or hand inside your vagina?
A. (Moving head).
The State later submitted in its closing argument that Bonnie “had stated that he had pushed her and put his hand inside her panties. And I believe he pushed it in some.”
¶ 16. On appeal, the State interprets Bonnie’s testimony as being unsure “if Jenkins put his finger in her vagina, but she was sure that he rubbed her vulva with his hand.” The State contends that “[t]he jury could have easily believed that the State proved beyond a reasonable doubt that while Jenkins did not get his *167 finger into [Bonnie’s] vagina, he did penetrate her labia.” However, we cannot find, beyond a reasonable doubt, that Bonnie’s testimony regarding “the top part” and “just on the outside” established that there was penetration even of the vulva or labia.
¶ 17. Bonnie stated that Jenkins did not go “inside.” Jenkins putting his hand inside her panties is not sufficient to constitute penetration, an essential element of sexual battery. In a similar case, the Mississippi Supreme Court considered an incident where the evidence only showed that the defendant fondled the victim’s breasts and “put his hand inside her panties[.]” West v. State, 437 So.2d 1212, 1213 (Miss.1983). The defendant was convicted of attempted sexual battery, and the supreme court reversed and rendered the judgment, concluding that there was not sufficient evidence of penetration. Id. at 1214. Typically, in Mississippi, incidents where a defendant merely has put his hand or rubbed on the victim’s vaginal area, without any testimony that the hand or a finger entered inside, have resulted in a charge of fondling, not sexual battery. See Givens v. State, 730 So.2d 81, 83-84 (¶¶ 1, 5) (Miss.Ct.App.1998) (defendant charged with fondling for putting his hand inside the victim’s underwear); Massey v. State, 992 So.2d 1161, 1163 (¶ 10) (Miss.2008) (defendant charged with fondling for rubbing victim’s “vaginal area with his whole hand”); Reid v. State, 987 So.2d 988, 989 (¶¶ 3, 5) (Miss.2008) (defendant indicted for fondling for rubbing victim’s breasts and putting “his hand inside her panties and massagfing] her vagina”); Mayo v. State, 58 So.3d 50, 51 (¶ 2) (Miss.Ct.App.2011) (defendant indicted “for rubbing the vaginal area of his four-year-old biological daughter”); Walker v. State, 55 So.3d 212, 213-14 (¶¶ 1, 8) (Miss.Ct.App.2011) (defendant convicted of fondling for “put[ting] his hands under [the victim’s] shirt and inside her underwear”).
¶ 18. Other jurisdictions also have stated that mere touching is not sufficient to constitute penetration. In People v. Maggette, 311 Ill.App.3d 388, 243 Ill.Dec. 637, 723 N.E.2d 1238, 1245 (2000), the Appellate Court of Illinois reversed a defendant’s conviction for criminal sexual assault, finding that the State “presented no evidence of any intrusion into [the victim’s] vagina by defendant’s hand or finger.” The court observed: “Mere touching or rubbing of a victim’s sex organ or anus with a hand or finger does not prove sexual penetration[.]”[6] Id. In Vernon v. State, 841 S.W.2d 407, 409 (Tex.Crim.App.1992), the Texas Court of Criminal Appeals considered a situation where the victim said that the defendant put his hand on her vagina and “started pressing.” In that case, the victim testified that she felt pain and discomfort; therefore, the appellate court held that the incident amounted to a slight penetration. However, it noted that “mere contact with the outside of an object does not amount to a penetration of it.” Id. But cf. Enurah v. State, 279 Ga.App. 883, 633 S.E.2d 52, 55 (2006) (sufficient evidence to support conviction for aggravated sexual battery as the victim testified that defendant “put his hand inside her ‘vagina area.’ ”).
¶ 19. We find that Bonnie’s testimony did not provide sufficient evidence of penetration of her vaginal area. Bonnie stated that Jenkins put his hand inside her panties, but his hand never went “inside.” Even when asked by the State to elaborate on her testimony, Bonnie still maintained that Jenkins’s hand was “outside.” The dissent argues that Bonnie’s testimony, regarding the September 19, 2008 incident, *168 established that “Jenkins’s hand went to the ‘top part’ of her genitals[.]” However, we find this interpretation of the testimony to be overreaching. As is evident from the quoted testimony above, Bonnie did not state that Jenkins touched her “genitals.” She merely said that his hand was on “the top part.” Furthermore, the dissent ambiguously states that “[Jenkins’s] hand would go ‘from her top to her bottom,’ ” which we find gives the erroneous impression that Jenkins’s hand went from the top to the bottom of her genital area. A complete reading of Bonnie’s testimony clearly shows that she meant his hand went from her breasts (top) to inside her panties (bottom).[7]
¶ 20. Accordingly, we find that Bonnie’s testimony failed to show, beyond a reasonable doubt, that there was penetration in regard to the September 19, 2008 incident. Nevertheless, we are concerned with the ambiguity of Bonnie’s non-verbal response — “(Moving head)” — to the question of whether Jenkins had inserted his finger into her vagina. There are instances in the record where “(Moving head)” denotes a positive response by Bonnie; yet, there are also instances where it indicates a negative response. The State, however, does not argue that the non-verbal response is sufficient to support penetration. In fact, as noted above, the State admits that the testimony did not prove that Jenkins “g[o]t his finger into [Bonnie’s] vagina,” the very question to which Bonnie’s non-verbal response was given. The circuit court’s judgment of conviction for Count II, sexual battery, is reversed -and rendered.[8]
III. Whether the failure to merge Jenkins’s convictions for fondling with his sexual battery convictions violated the Double Jeopardy Clause of the United States Constitution.
¶ 21. Citing Friley v. State, 879 So.2d 1031, 1035 (¶ 17) (Miss.2004), Jenkins argues that fondling is a lesser-included offense of sexual battery. Thus, he claims that his separate convictions for fondling (Count I) and sexual battery (Count II) subjected him to double jeopardy.
¶ 22. Jenkins failed to object to the form of the indictment; therefore, this issue is waived on appeal. Notwithstanding, we note that while the Mississippi Supreme Court in Friley did state that under the particular circumstances of that case, “molestation is a lesser-included offense of sexual battery,” id., it later observed in Tapper v. State, 47 So.3d 95, 103 (¶ 30) (Miss.2010), that “it is possible to commit an unlawful touching without committing sexual battery.” In this case, Jenkins put his hand inside Bonnie’s pants, an *169 act which we have found erroneously resulted in a conviction of sexual battery. However, Jenkins also lifted up Bonnie’s shirt and bra to touch her breasts. He then proceeded to alternate touching between her breasts and putting his hand inside her panties. As the State notes: “It is impossible to accomplish penetration when fondling the breasts for gratification of lust, therefore, that separate act cannot merge with the sexual battery[.]” Although we have reversed and rendered the conviction for Count II, sexual battery, we find no error, under these circumstances, in the separate conviction for Count I, fondling.
IV. Whether trial counsel’s performance constituted ineffective assistance of counsel.
¶ 23. To establish a valid claim of ineffective assistance of counsel, a defendant must demonstrate that: “(1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense.” Tucker v. State, 60 So.3d 221, 223 (¶ 7) (Miss.Ct.App.2011) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “[A] defendant must show ‘that counsel’s errors were so serious as to deprive the defendant of a fair trial.’ ” Rodgers v. State, 66 So.3d 736, 738 (¶ 8) (Miss.Ct.App.2011) (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052). The defendant bears the burden of proof “to show both prongs.” Tucker, 60 So.3d at 223 (¶ 7) (citing McQuatter v. State, 574 So.2d 685, 687 (Miss.1990)).
¶ 24. Jenkins claims that defense counsel’s cross-examination of witnesses was inept. Jenkins notes specifically that defense counsel erroneously elicited testimony from Judy regarding Jenkins’s prior felony convictions, which had been excluded from evidence. When Judy testified that Jenkins had been terminated from his volunteer position at the local school, defense counsel inquired as to why that occurred.
Q. What was the cause of that?
A. It was because the central office and then he wasn’t allowed, a complaint about him. I don’t know if I should say what the complaint was.
Q. Yes, please.
A. That he was a convicted felon and he did not need to be around children, and, therefore, they did not allow him around back at the school.
A bench discussion was held regarding the inadmissible remarks, and the circuit court issued a limiting instruction, instructing the jury to “disregard the response about a prior conviction” and to “not use that conviction as evidence in this case.”
¶ 25. Jenkins argues that the testimony about his prior convictions was “so damagingU it could not have been mitigated by the limiting instruction given to the jury.” There is a presumption that a circuit court’s limiting instruction to a jury, to disregard testimony or evidence that might be prejudicial, cures any error. Burnside v. State, 912 So.2d 1018, 1024 (¶ 10) (Miss.Ct.App.2005) (citing Smith v. State, 530 So.2d 155, 161 (Miss.1988)). After the circuit court presented the limiting instruction, the judge asked the jury if it could disregard the evidence, and it answered in the affirmative. Considering the quickness in which this issue was addressed at trial and corrected by the circuit judge, we presume that the limiting instruction cured any error caused by the introduction of the evidence.
¶ 26. “There is no constitutional right to errorless counsel.” Thorson v. State, 994 So.2d 707, 719 (¶ 31) (Miss.2007) (citing Mohr v. State, 584 So.2d 426, 430 (Miss.1991)). Even if defense counsel’s eliciting of testimony re *170 garding Jenkins’s prior convictions constituted deficient performance, Jenkins has not satisfied the second prong of Strickland, by showing this Court that there is a reasonable probability that the outcome of the trial would have been different. There was substantial testimony concerning Jenkins’s sexual battery and molestation of Bonnie. Consequently, Jenkins has failed to establish any prejudice resulting from his attorney’s accidental solicitation of evidence that he was a convicted felon.
Y. Whether the circuit court erred in denying Jenkins’s motion for a new trial.
¶ 27. A motion for a new trial challenges the weight of the evidence. Beasley, 74 So.3d at 364 (¶ 34). “Under this standard, ‘we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Id. (quoting Bush, 895 So.2d at 844 (¶ 18)).
¶ 28. Jenkins argues that Bonnie concocted the allegations against him for revenge because he was a strict parent, and he contends that her actions after his indictment support this theory. He notes that after he was arrested, Bonnie quickly joined internet social networking sites, and at the time of the trial, she was pregnant with her boyfriend’s child. Bonnie did acknowledge that Jenkins was a strict disciplinarian. When asked how she was disciplined, she said: “I’d have to grab my ankles[,] and I’d get hit with a board.” She noted that her sisters did not have to do that.
¶ 29. Judy testified that Jenkins would often only take Bonnie on errands. When she questioned Jenkins about it, he explained it was because he had not been around when Bonnie was young. Judy also observed that he occasionally made inappropriate remarks regarding Bonnie’s friends:
Well, I actually had talked to him about things that were inappropriate, such as about the girls’ body. He would make comments about the various girls’ breasts. That’s all. He was actually saying things about [Bonnie’s] friends figure ... so I did say things to him.
[[Image here]]
But just different things like about the panties or the bra strap is showing[,] and I just said that’s not something you need to make, that’s something her parents could handle.
Beth McCune, who had hosted the birthday party on September 19, 2008, also stated that Jenkins had made inappropriate comments regarding her two teenage daughters. She stated that she felt “uncomfortable” around Jenkins. McCune also said that Jenkins came up to her on one occasion and “pat[ted]” her, “which was pulling my pants down, because he thought I was [Bonnie].” Jenkins also poked his finger through a hole in McCune’s shirt on another occasion, which she found to be odd since she “barely knew him.”
¶ 30. Bonnie provided extensive and detailed testimony concerning Jenkins’s sexual battery and molestation. As we have already discussed, Bonnie stated that Jenkins touched her breasts and put his hand inside her panties after the birthday party on September 19, 2008. Bonnie also testified that Jenkins touched her breasts on October 11, 2008, and attempted to put his hand inside her panties, but her pants were too tight for him to be able to do so. Bonnie explained that as a result, Jenkins wanted her to put on sexy shorts that he had bought her when she got home. Finally, in her testimony regarding the February 22, 2009 incident, Bonnie stated: *171 “He placed his hand on my butt to make me push forward and then he, he put his finger in.”
¶ 31. Bonnie also testified that Jenkins told her that before she could get a boyfriend, she “had to lose [her] virginity with [Jenkins].” When questioned on direct examination what Jenkins considered their relationship to be, Bonnie stated: “He said I was an adult, that he’d raise my daughter and think of me as a lover.” She subsequently explained that Jenkins told her if she became pregnant by him, “he would help raise [the baby] 100%[.]”
¶ 32. Accordingly, we find that the overwhelming weight of the evidence supports the verdicts for Counts I, IV, and V.
¶ 33. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND IV, FONDLING; AND COUNT V, SEXUAL BATTERY; AND SENTENCES AS A HABITUAL OFFENDER OF FIFTEEN YEARS EACH ON COUNTS I AND IV AND THIRTY YEARS ON COUNT V, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. THE JUDGMENT OF CONVICTION OF COUNT II, SEXUAL BATTERY, AND SENTENCE OF THIRTY YEARS IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J.

. See Miss.Code Ann. § 99-19-81 (Rev.2007). In 1990, Jenkins was convicted on four counts of burglary of a dwelling, with each conviction resulting in a sentence of four years.

. Fictitious names have been used for the minor victim and her family members to protect the identity of the victim.

.Although Jenkins is Bonnie's biological father, he terminated his parental rights after the couple’s divorce. Judy's father, Bonnie’s grandfather, adopted her.

. Due to jurisdictional issues, the only charges brought against Jenkins concerned those incidents that took place after the family moved to Cleveland.

. Although this is Issue IV in Jenkins's appellate brief, we will address this issue now as it is pertinent to our analysis and disposition of other issues presented.

. The Illinois Supreme Court subsequently upheld the reversal of the conviction in People v. Maggette, 195 Ill.2d 336, 355, 254 Ill.Dec. 299, 747 N.E.2d 339 (2001).

. On cross-examination, the following exchange occurred:
Q. And you’re testifying that he took your bra off, kind of like pulled it up?
A. Yeah.
[[Image here]]
Q. Your dad was driving, watching the road and pulled your clothes up?
A. It was on automatic.
Q. All right. You can sit back down. I'm sorry. Okay. Did he also pull your pants down?
A. He didn’t pull them down. He just unbuttoned them and put his hand under them.
Q. And he tried to pull them down, right?
A. No, ma’am. He made me unbuckle them. He couldn’t do both at one time. He’d go from one to the other.
Q. From one to the other, you mean from your top to your bottom?
A. Yes, ma'am.

. Jenkins does not challenge the sufficiency of the evidence regarding the other three convictions.