GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 22. I would reverse and render on Walker's conviction for Count I, sexual battery, finding the evidence insufficient to
 support the jury's verdict. I concur with the majority upholding the conviction of fondling and concur with the remainder of the majority opinion.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 23. As I would reverse and render the conviction for sexual battery, a further factual assessment is in order. On September 22, 2012, eight-year-old Amy
 
 [3]
 
 had spent the day with her adult stepsister, Leslie Horton. As Horton pulled up to Amy's home to drop her off, Amy told Horton that she did not want to get out of the car and wanted to wait for her mother to arrive at the home because Walker, her mother's live-in boyfriend, was there. Horton asked why Amy did not want to go inside. According to Horton, Amy told her that Walker "puts his private inside of her and makes her go up and down." Horton then called Debbie Williams, Amy's aunt, and they all met at a nearby restaurant.
 

 ¶ 24. Upon arrival, Williams asked Amy why she did not want to go home, and Amy replied that she did not want to because her mother was not there. According to Williams, Amy further explained that she did not want to go home because Walker "touches [her] and makes [her] go up and down on him." After hearing this, Williams decided to take Amy to Bolivar County Medical Center and have her examined. According to Williams, on the ride to the hospital, Amy told her that "sometimes when her mother was not at home [Walker] would touch her private areas." While at the hospital, the medical staff examined Amy and the Cleveland Police Department was called.
 

 ¶ 25. Shortly after her examination at Bolivar County Medical Center, Amy was examined by Stacey Carter, a nurse practitioner specializing in pediatric forensic medicine at the University of Mississippi Medical Center. Carter noted that Amy had redness on her labia majora but that her examination results were otherwise normal. Additionally, on October 2, 2012, Amy was taken for a video-recorded forensic interview performed by Katrina Kennedy.
 

 ¶ 26. From June 8 to 11, 2015, a jury trial was held before the circuit court. During this trial, the State's first witness was Horton, who testified that Amy told her the reason she did want to be dropped off at home was that Walker was home and he made her "go up and down when I don't want to." Horton further testified that Amy told her that "[Walker] puts his privates inside of her and makes her go up and down." Additionally, Williams, Amy's aunt, testified that Amy told her that "[Walker] touches her and makes her go up and down."
 

 ¶ 27. Amy, who was eleven at the time, also testified on behalf of the State at trial. During her testimony, Amy repeatedly stated that Walker touched her back, hands, between her legs and up around her stomach on numerous occasions. She further explained that she had underwear on when Walker would touch her but "one time [Walker] took his private out" and "pulled [her] underwear down," telling her "to lay on top of him." Amy testified that, then Walker would "rub his private between [her] legs," but when asked if Walker's private was inside her body, she stated "on the outside."
 

 ¶ 28. Additionally, the jury watched the October 2, 2012 video-recorded forensic interview between Amy and Kennedy. In this recording, Amy stated several times that Walker put his private in her. However,
 she then explained that this occurred while her clothes were on. When Kennedy asked Amy to explain if Walker's private was "in [her], was it on top of [her] skin, or something else," Amy replied "on top of it." Further, when asked for clarification later in the recording, Amy explained that Walker's private was on top of her private. Additionally, when asked about the conversation with her step-sister, Amy explained that she told Horton that she did not want to go inside her mother's home because Walker "touches her privates."
 

 DISCUSSION
 

 ¶ 29. Walker asserts that the circuit court erred in not granting his motion for a judgment notwithstanding the verdict because there was insufficient evidence to support his conviction for count one, sexual battery. Specifically, he asserts that there is no evidence of "penetration" which is an essential element of sexual battery. Conversely, the State urges that viewing the evidence in a light most favorable to the State, there was sufficient evidence of penetration that could be inferred beyond a reasonable doubt. The State argues that it was reasonable for the jury to infer penetration from the video-recorded forensic interview combined with the testimony of Amy's step-sister and aunt. However, after reviewing the evidence in the light most favorable to the prosecution, a rational juror could not have found that Walker penetrated Amy as required for a sexual battery conviction. This rationale is especially true when considering Amy's ample testimony, and considering the evidence of penetration is hearsay from her appropriately supportive family.
 

 ¶ 30. Sexual penetration in Mississippi has been statutorily defined to include "cunnilingus, fellatio, buggery[,] or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code. Ann. § 97-3-97(a) (Rev. 2014). Further, Mississippi precedent has established that "[p]enetration is the very essence of the crime of sexual battery."
 
 Ringer v. State
 
 ,
 
 203 So.3d 794
 
 , 796 (¶ 3) (Miss Ct. App. 2016) (quoting
 
 Johnson v. State
 
 ,
 
 626 So.2d 631
 
 , 632 (Miss. 1993) ). Additionally,"[p]enetration, however slight, is sufficient to establish the penetration element of sexual battery."
 
 Burrows v. State
 
 ,
 
 961 So.2d 701
 
 , 706 (¶ 17) (Miss. 2007).
 

 ¶ 31. In
 
 Jenkins v. State
 
 ,
 
 101 So.3d 161
 
 (Miss. Ct. App. 2012), this Court faced a similar situation. In
 
 Jenkins
 
 , the circuit court convicted Jenkins of two counts of sexual battery and two counts of fondling.
 

 Id.
 

 at 163
 
 (¶ 1). This Court reversed one count of sexual battery, finding there was insufficient evidence to establish, beyond a reasonable doubt, that penetration occurred on the date alleged in the indictment.
 

 Id.
 

 at 168
 
 (¶ 20). The Court noted that "[t]ypically, in Mississippi, incidents where a defendant merely has ... rubbed on the victim's vaginal area, without any testimony that the hand or finger entered inside, have resulted in the charge of fondling, not sexual battery."
 

 Id.
 

 at 167
 
 (¶ 17). Therefore, the Court reasoned that the victim's testimony-that Jenkins put his hand inside her panties, on "the top part" of her genitals, and "just on the outside" of her genitals-was insufficient to establish that penetration occurred.
 

 Id.
 

 at 168
 
 (¶ 20).
 

 ¶ 32. Similarly, in the present case, there is insufficient evidence of penetration. Horton did testify that Amy told her that Walker "puts his private inside of her and makes her go up and down." However, Williams's testimony did not indicate penetration occurred. According to Williams, Amy said she did not want to be with Walker "because he touches and makes me go up and down on him." Even Amy's testimony refutes evidence of penetration.
 

 During Amy's direct testimony she did not indicate that any penetration occurred, only stating that Walker's private was "on the outside" of her body. Further, in the video-recorded forensic interview, Amy explained that she told Horton she did not want to go inside the home because Walker "touches her privates."
 

 ¶ 33. In the forensic interview, although Amy stated Walker's private was inside her body on occasion, she consistently stated that Walker's private was "on the outside" and that during the alleged episode of sexual battery, her clothes were on. Moreover, during the interview, Kennedy specifically asked Amy, "Did you say he put his private on you or in you? What did you say?" Amy responded, "On me." Such was consistent with her direct testimony at trial and contradicted Horton's testimony.
 

 ¶ 34. Accordingly, there was insufficient evidence of penetration. Therefore, the circuit court's judgment of conviction for count one, sexual battery, should be reversed and rendered.
 

 IRVING, P.J., AND CARLTON, J., JOIN THIS OPINION.
 

 The Court of Appeals declines to identify sexual-assault victims. To protect the victim's privacy, her name has been substituted with an alias.