# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01331-COA

KEITH CRAWFORD                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                     APPELLEE

DATE OF JUDGMENT:                    09/07/2018
TRIAL JUDGE:                         HON. LINDA F. COLEMAN
COURT FROM WHICH APPEALED:           QUITMAN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF STATE PUBLIC DEFENDER
                                     BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: ALICIA MARIE AINSWORTH
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED - 10/08/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     After a trial in September 2018, a Quitman County, Mississippi jury convicted Keith Crawford of one count of fondling an eleven-year-old child in violation of Mississippi Code Annotated section 97-5-23 (Rev. 2014). After denying Crawford's motion for a new trial, the court sentenced him to seven years in the custody of the Mississippi Department of Corrections. Crawford appeals his conviction and sentence, challenging the court's admission of the child's hearsay statements made to others, as well as the sufficiency and weight of the evidence against him. Having considered the briefs of counsel and relevant law, we find no error by the court and affirm.

**FACTS**

¶2.     On Saturday evening, August 19, 2017, eleven-year-old Amy[1] decided to take a nap. Amy's mother had taken some flu medication and was asleep in her own room. Besides her mother, Amy's eighteen-year-old sister lived with them, but she was not at home that evening. Twenty-two-year-old Crawford, who was a frequent visitor, had come by to see Amy's sister. When Amy went to lie down, Crawford was in the living room watching television.

¶3.     Amy was awakened to find Crawford on top of her. He had his pants and underwear down to his ankles, and he had taken Amy's pants and underwear down as well. Amy yelled at him to get off of her. He did, pulled up his pants, and went back into the living room. Nothing like this had ever happened to Amy, and she was scared to tell her mother. Later that evening, they all went to get something to eat. The next day, when Crawford came by again, Amy uncharacteristically insisted that Crawford go home.

¶4.     The next week, Amy wrote a note to her mother but first showed it to her friend "Bob," who was a year younger than Amy. Amy's mother routinely dropped Amy off at Bob's house in the morning on her way to work so Amy could walk to school with him. Amy knew Bob's mother as well and referred to her as her "godmom." The note Amy had written and shown to Bob said:

> Ma I am sorry I did not tell u this the same night it happen becuz I was scared
>
> this happen before we went to K and J

---

[1] "Amy" and all other names of minors involved are fictitious in order to protect their identities.

I went in my room to get a lil sleep and wen I woke up Keith was on top of me his pants was down and mines and I got real mad thats y I kept on telling to go home last night. ["Sam"] the boy that like me told me to tell u.

Bob told his mother that something was wrong with Amy. Bob's mother spoke to Amy, heard the basic facts of what had happened to her, and immediately called Amy's mother. Amy's mother, who worked as a bus monitor, left work and picked Amy up from school.

¶5. Amy showed her mother the note and told her the same thing—that on Saturday she woke up to find Crawford lying on top of her with his pants down and that her pants were down as well. Her mother called Amy's father who called the police. Although the incident had happened several days before, Amy's mother took Amy to the hospital to be checked.[2] The police met them there and referred them to a forensic interviewer who specialized in interviewing and assessing minors who are victims of sex crimes.

¶6. A few weeks later, Amy and her mother traveled to Oxford to meet with the forensic interviewer. During the interview, the examiner used diagrams of the male and female body and asked Amy to point to the body part of Crawford that had touched her. Amy pointed to the penis on the male figure, which she called a "cock." On the female figure Amy identified the body part that Crawford's penis touched on her as her vagina, which she called her "cat." Amy's interview was videotaped and viewed via a one-way mirror by law enforcement.

¶7. Based on Amy's interview and statements from Amy's and Bob's mothers, a Quitman County grand jury indicted Crawford on one count of fondling. Prior to trial, the State filed a motion for the admission of the statements Amy made to other witnesses (Bob's mother,

---

[2] The record is silent as to the results of the hospital examination.

3

Amy's mother, and the forensic interviewer). On the first day of trial, outside the presence of the jury, the court heard the State's motion and testimony from these witnesses. The court noted the hearsay exception found in Mississippi Rule of Evidence 803(25) for when a child of tender years describes sexual contact.

¶8. The court found that Amy was of tender years since she was under the age of twelve at the time of the incident. The court had observed Amy's conduct when she was introduced to the jury prior to voir dire and found it to be consistent with the forensic interviewer's conclusion that Amy was on the maturity level of the lower end of a child of eleven. The court considered that the timing of Amy's statements to Bob's mother and her own mother, being just a few days after the incident, indicated reliability. Amy relayed information to them in narrative form, and no manner of suggestion or prompting was used to secure her statements. Amy's statements to all were consistent. The court noted that Amy's mother testified that Crawford was someone she had trusted in their home, so there was no evidence of animosity that Amy may have against him or a motive for her to willfully fabricate a lie of this magnitude against him. The court went on to detail the forensic interviewer's qualifications and findings with which the court agreed from its own observation of the child. Finding that the statements met the requirements of Rule 803(25), the court held that it would admit the hearsay testimony from these witnesses under the tender-years exception to hearsay.

¶9. The trial then began, and Bob's mother testified first. She told the jury that Amy had told her that Crawford was on top of her when she awoke and both of their pants were down.

4

Amy's mother testified next and said that Amy told her the same thing. Amy, who was twelve at the time of the trial, then testified about what happened. When she was asked what part of Crawford's body she could feel while lying in the bed, she answered "his legs" and nothing more. When the prosecutor asked again what parts of Crawford's body were touching hers, Amy said she could not remember. She also testified that she knew the places on a girl's body that should not be touched, and she said that no one had touched her in any of those places. She did say that when Crawford got off of her, she saw his "middle part"—his penis. The defense chose not to cross-examine Amy.

¶10. Outside the presence of the jury, the defense renewed its objection to the hearsay testimony of Amy's and Bob's mothers because Amy herself had not testified that Crawford's penis had touched her vagina as alleged in the indictment. The court noted that the defense had the opportunity to cross-examine Amy about the things she had told others, but the defense chose not to. The court overruled Crawford's objection and said that any difference between what Amy testified to live and what she said to others closer in time to the incident created a question of fact for the jury to decide.

¶11. The forensic interviewer was the next witness. She testified to the procedures followed at the Child Advocacy Center when minors are interviewed. She identified the videotape of her interview with Amy, which was entered into evidence and played to the jury. The interviewer testified that initially she found it difficult to establish a rapport with Amy but that she later realized that a certain hesitancy or reluctance was just part of Amy's demeanor. Amy denied having seen any pornography or viewing any improper pictures on

5

her phone. The interviewer testified that Amy had clearly said in the interview that Crawford's penis touched the top of her panties and the skin of her vaginal area.

¶12. The defense moved for a directed verdict, which the court denied. The defense presented no witnesses. After instruction by the court, the jury deliberated. It sent out one note, asking to view the video interview again, which the court allowed with no objection by the defense. The jury then returned a verdict, finding Crawford guilty of one count of fondling.

¶13. Crawford filed a motion for a judgment notwithstanding the verdict, which the court denied. Crawford now appeals his conviction to this Court. He raises three issues:

I.  Whether the court erred in allowing Amy's hearsay statements.

II. Whether the court erred in denying Crawford's motion for a judgment notwithstanding the verdict.

III. Whether the verdict of the jury was against the overwhelming weight of the evidence and warranted a new trial.

### STANDARD OF REVIEW

¶14. The standard of review for the admission of evidence, including hearsay evidence, is one of abuse of discretion. *Case v. State*, 187 So. 3d 177, 181 (¶11) (Miss. Ct. App. 2015); *Tillis v. State*, 176 So. 3d 37, 45 (¶15) (Miss. Ct. App. 2014). "A motion for [a judgment notwithstanding the verdict] challenges the sufficiency of the evidence presented to the jury." *Sacus v. State*, 956 So. 2d 329, 334 (¶12) (Miss. Ct. App. 2007). This requires an inquiry into whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" viewing the evidence in the light most favorable to the

6

prosecution. *Id.* On the other hand, a motion for a new trial challenges the weight of the evidence. *Id.* at (¶13). "This Court will review the trial court's denial of a motion for a new trial under an abuse of discretion standard" and "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.*

## DISCUSSION

### I. Whether the court erred in allowing Amy's hearsay statements.

¶15. Crawford contends that the court erred when it allowed Amy's mother, Bob's mother, and the forensic interviewer to testify to statements Amy made to them about the incident. After holding a "tender years" hearing outside the presence of the jury, the court found that the testimony was reliable and that the State had met the criteria set out in the Mississippi Rules of Evidence for its admission. We agree and find no error by the court in its ruling.

¶16. "Hearsay is inadmissible unless the law provides an exception." *Metcalf v. State*, 265 So. 3d 1242, 1252 (¶42) (Miss. Ct. App. 2019) (citing M.R.E. 802). The tender-years hearsay exception is set forth in Rule 803(25) of the Mississippi Rules of Evidence as follows:

> Tender Years Exception. A statement by a child of tender years describing any act of sexual contact with or by another is admissible if:
>
> > (A) the court—after a hearing outside the jury's presence—determines that the statement's time, content, and circumstances provide substantial indicia of reliability; and
>
> > (B) the child either:
>
> > > (i) testifies; or

7

> (ii) is unavailable as a witness, and other evidence corroborates the act.

M.R.E. 803(25).   In determining whether an out-of-court statement by the declarant is admissible under this exception, "the court must determine (1) that the declarant is a child of tender years and (2) that the time, content, and circumstances of the statement provide substantial indicia of reliability." *Veasley v. State*, 735 So. 2d 432, 436 (¶14) (Miss. 1999) (internal quotation marks omitted).

¶17.   Crawford admits that Amy was a child of tender years, and the record reflects that she was available and did testify.  Crawford's only challenge is to the reliability of the statements that Amy made to her mother, Bob's mother, and the forensic interviewer.  Drawing from the Supreme Court case of *Idaho v. Wright*, 497 U.S. 805, 822 (1990), the comment to Rule 803 provides a non-exhaustive list of twelve factors that the trial court can consider when determining if there was sufficient indicia of reliability, including:

> (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

M.R.E. 803(25) advisory committee's note.

¶18.   This Court has previously held that "a sufficient on-the-record finding of reliability does not require 'each factor be listed and discussed separately by the trial judge.'" *Webb*

8

*v. State*, 113 So. 3d 592, 600 (¶24) (Miss. Ct. App. 2012) (quoting *Bosarge v. State*, 786 So. 2d 426, 437 (¶32) (Miss. Ct. App. 2001)). Moreover, the list of factors is not exclusive, and "the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Wright*, 497 U.S. at 822.

¶19. Here, the court made an on-the-record finding of reliability and specifically addressed the *Wright* factors. As recounted by the court, evidence showed the child had no motive to lie, that no suggestive prompting was used by Amy's mother, Bob's mother, or the interviewer, that Amy told her mother and Bob's mother the same thing, and that both mothers chose not to go into more detail with the child although the interviewer did. Evidence further showed that Amy was consistent in the spontaneous statements to Bob's mother and her own mother and that these statements were made within a few days of the incident. Amy gave the information in narrative form and named Crawford by name when relaying the event. The professionally trained forensic interviewer who spoke to Amy approximately a month later observed Amy's demeanor and considered her to be on the maturity level of the lower end of eleven and to be a child of tender years. The interviewer said Amy spoke to her without confusion and even corrected her when Amy thought the interviewer may have misunderstood something. The court found that Amy's statements to these witnesses were reliable, and we find no abuse of the court's discretion in so finding.

¶20. Crawford argues that because Amy herself did not testify at the tender-years hearing, the court had no basis to determine the reliability of the testimony of the other witnesses.

9

However, there is no requirement under Rule 803(25) that the minor victim testify at the tender-years hearing, and Crawford cites no authority to support his position. The rule only requires that the child be available to testify at trial or, if unavailable, that other evidence must be presented to corroborate the act. Often the children do not testify at the tender-years hearing. *See Austin v. State*, No. 2018-KA-00369-COA, 2010 WL 2590767, at *5 (¶24) (Miss. Ct. App. June 25, 2019) (finding the trial court did not abuse its discretion in determining that the child's mother's testimony regarding the child's statements were reliable). That Amy testified at trial that she could not remember which parts of Crawford's body touched hers does not affect the reliability of the statements she had made a year before, especially the specific facts she told to a professionally trained interviewer. The court had garnered sufficient evidence at the tender-years hearing to apply the *Wright* factors, and we find no error in the court's finding that Amy's hearsay statements to her mother, Bob's mother, and the forensic interviewer were reliable and admissible.

## II. Whether the court erred in denying Crawford's motion for a judgment notwithstanding the verdict.

¶21. In his motion for a judgment notwithstanding the verdict, Crawford argued that his conviction should be reversed because the evidence against him was insufficient to sustain a verdict—specifically because Amy's trial testimony differed from the description of events she gave to the forensic interviewer. The circuit court denied Crawford's motion, and he presents the same argument to this Court on appeal. We reject it as well.

¶22. A motion for a judgment notwithstanding the verdict challenges the legal sufficiency of the evidence, *Jenkins v. State*, 101 So. 3d 161, 165 (¶12) (Miss. Ct. App. 2012), and the

10

court has discretion to grant or deny the motion. *Davis v. State*, 878 So. 2d 1020, 1027-28 (¶32) (Miss. Ct. App. 2004). "When addressing the legal sufficiency of evidence, we consider all evidence in a light most favorable to the State." *Jenkins*, 101 So. 3d at 165 (¶12). In this regard, "[t]he critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *McBride v. State*, 61 So. 3d 174, 183 (¶29) (Miss. Ct. App. 2010) (internal quotation mark omitted). This Court will only reverse where the evidence shows, on at least one element of the crime, that "a reasonable and fair[-]minded jury could only find the accused not guilty." *Derouen v. State*, 994 So. 2d 748, 751-52 (¶8) (Miss. 2008). "[A]ny conflicts in the evidence or testimonies of witnesses are for the jury to resolve, as the trier of fact." *Withers v. State*, 907 So. 2d 342, 352 (¶29) (Miss. 2005).

¶23. Crawford's indictment charged that he "did . . . for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, handle, touch or rub with his penis, the vagina or genital area of [Amy] . . . ." As shown in the video, during her interview with the forensic examiner, Amy clearly identified the area of Crawford's body that touched the private area on her body. She even clarified this for the interviewer and referred to them in her own nomenclature—his "cock" was on her "cat." At trial, however, when asked what part of Crawford's body she could feel, she said, "his leg." Later in her testimony, she was asked again what parts of his body touched hers, and she answered that she could not remember. Crawford argues that because her live testimony did not support the charges in

11

the indictment, there was insufficient evidence to convict him. We disagree.

¶24. First, Amy's trial testimony did not necessarily contradict what she said in her interview. She was a child, inexperienced in sexual matters, and could easily have thought that Crawford's penis felt like a leg. Further, testifying before a jury in a courtroom on such a matter can be an embarrassing and unnerving experience for a child, so a jury could find it understandable that she could not recall or relate the specific, intimate details of the event, which happened a year earlier. Closer in time, in the less intimidating environment of an office, with a professionally trained interviewer who had established a rapport and with whom Amy appeared more comfortable, she was able to discuss the specific body parts that touched. "[I]n a criminal prosecution, it is the jury's function, after hearing all the evidence and receiving the applicable law and instructions, to accept the testimony of some witnesses and reject that of others, as well as to accept in part and reject in part the evidence on behalf of the [S]tate or on behalf of the accused." *Davis*, 878 So. 2d at 1027 (¶30). "[T]he jury is the final arbiter of a witness's credibility." *Pustay v. State*, 221 So. 3d 320, 356 (¶125) (Miss. Ct. App. 2016). Here, the jury heard Amy's testimony both live and by video and resolved any conflicts in favor of the State.

¶25. Moreover, there was other evidence supporting Amy's testimony. The statements she made to her mother and Bob's mother were nearly contemporaneous with the event and differed in no way. Critically important was the note Amy wrote prior to being questioned by anyone at all. In it she referred to Crawford having his pants down and lying on top of her. Therefore, Amy's testimony was independently corroborated.

12

¶26. Viewing the evidence presented in the light most favorable to the State, we find that the testimony and proof provided was sufficient for a rational juror to have found Crawford guilty beyond a reasonable doubt of the offense charged and that the court did not abuse its discretion in denying his motion for a judgment notwithstanding the verdict.

### III. Whether the verdict of the jury was against the overwhelming weight of the evidence and warranted a new trial.

¶27. A motion for a new trial challenges the weight of the evidence, and we will only reverse a jury's verdict "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Forrest v.* State, 57 So. 3d 36, 38 (¶9) (Miss. Ct. App. 2011). Again, "[t]he evidence should be weighed in the light most favorable to the verdict." *Lambert v. State*, 101 So. 3d 1172, 1177 (¶19) (Miss. Ct. App. 2012). Here we find no abuse of discretion in the trial court's denial of Crawford's motion for a new trial.

¶28. Crawford's argument on this issue is the same as his argument on the previous issue, namely that Amy did not testify at trial specifically about how and where on her body Crawford touched her. However, in the videotaped interview that was entered into evidence and viewed by the jury, Amy clearly explained the body parts that touched. As stated previously, the jury obviously resolved any conflicts it saw in the evidence in favor of conviction. Moreover, there was no contradiction between Amy's testimony and that of other witnesses and the note she wrote about the incident. The jury's verdict was not against the overwhelming weight of the evidence, and we find that the court did not abuse its discretion in denying Crawford's motion for a new trial.

13

## CONCLUSION

¶29. For the aforementioned reasons, this Court finds no reversible error by the circuit court, and we affirm its rulings and Crawford's conviction and sentence.

¶30. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**